780 So.2d 602 (2001)
STATE of Louisiana, Appellee,
v.
Derick FURLOW, Appellant.
No. 34,339-KA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 2001.
*604 Amy C. Ellender, Louisiana Appellate Project, Counsel for Appellant.
Richard Ieyoub, Attorney General, Baton Rouge, Paul Carmouche, District Attorney, Shreveport, Donna Hall, Assistant District Attorney, Counsel for Appellee.
Before BROWN, STEWART and DREW, JJ.
BROWN, Judge.
Defendant, Derick Furlow, pled guilty to possession of cocaine reserving the right to appeal the denial of his motion to suppress. See State v. Crosby, 338 So.2d 584 (La.1976). The trial court imposed an agreed three-year sentence with credit for time served and the balance suspended and directed defendant to pay costs with jail time in default of payment. Defendant challenges the trial court's failure to suppress the evidence and the imposition of jail time in default of the payment of court costs.

FACTS
On the night of July 31, 1999, defendant, Derick Furlow, was "hanging out" in front of the Pendleton hotel/apartment complex, a location targeted by the "Directed Patrol Unit" of the Shreveport Police Department as a "high crime" area. According to Corporal Don Vishnefski, the officer in charge of the directed patrol unit, there had been shootings and stabbings at the Pendleton, and it had been an active drug location since 1990. On this night, when police cruisers approached, lookouts warned those loitering in front of the building who would then run inside. Around 10:30 p.m., the officers parked their vehicles and walked to the Pendleton. When defendant saw the police rounding the corner of the building, he immediately put his hands in his pockets. Fearing a weapon, Corporal Vishnefski grabbed Furlow's hands, placed him against the wall and patted him down. The officer felt a large, metallic bulge in Furlow's left front pocket. The officer removed the bulge from Furlow's pocket and found keys, four folded pieces of paper and a small brown piece of paper (a cutoff corner of a grocery bag) twisted at the top. The officer untwisted the brown paper and *605 found three small rocks of cocaine. Corporal Vishnefski testified that he grabbed defendant's hands because he did not know whether defendant was going for a gun, a knife, "or whatever." Thereafter, the patdown was for the officer's safety. Corporal Vishnefski described the bulge as big and believed it could have been a weapon. The bulge was in defendant's left front pocket, and Corporal Vishnefski said he felt metal when he first touched it. The bulge consisted of four pieces of eight by eleven paper folded several times, plus keys and the brown paper containing the rocks of cocaine. Until he had removed the items from the pocket, Corporal Vishnefski did not know what the metallic object was; rather, he thought "anything" could be in there and he needed to verify that there weren't any weapons. Such a bulge, he opined, could have been a knife, a razor or even a small pistol.
After Corporal Vishnefski pulled out the bulge, he realized it wasn't a weapon; however, Vishnefski, who was a ten-year veteran of the Shreveport P.D., knew, based on his prior experiences, that the small, brown paper was used to carry rocks of cocaine.

DISCUSSION

I. Motion to Suppress
An analysis of the merits of the motion to suppress includes three inquires: (1) was the original investigatory stop lawful; (2) if so, did the circumstances justify a further search for weapons; and, (3) even if the stop and patdown were legal, was the officer justified in opening the small brown paper.
The Fourth Amendment to the United States Constitution, made applicable to the states by way of the Fourteenth Amendment, guarantees the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Searches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions. One such exception was recognized in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which held that "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot ...," the officer may briefly stop the suspicious person and make "reasonable inquiries" aimed at confirming or dispelling his suspicions. Id. at 30, 88 S.Ct. at 1884, 20 L.Ed.2d at 911.
Terry further held that, "[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," the officer may conduct a patdown search "to determine whether the person is in fact carrying a weapon." 392 U.S. at 24, 88 S.Ct. at 1881, 20 L.Ed.2d at 907. Such a protective search based on reasonable suspicion must be strictly "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." Terry, supra, at 26, 88 S.Ct. at 1882, 20 L.Ed.2d at 908. If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under Terry and its fruits will be suppressed. Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).
Thus, Terry recognizes that a "stop" is a seizure of the person and a "frisk" is a search; however, because a "stop" is more limited than an arrest and a "frisk" less intrusive than a full-blown search, such actions, though not to be undertaken arbitrarily, may be reasonable within the contemplation of the Fourth Amendment upon a predicate less substantial than "probable cause." "Stop and frisk" is not to be judged by the probable *606 cause necessary for a warrant but by the reasonableness clause of the Fourth Amendment. The measure is reasonableness of belief or suspicion.
[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion ... Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanctioned ...
Terry, 392 U.S. at 21-22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906.
In State v. Willis, 31,561 (La. App.2d Cir.01/20/99), 728 So.2d 493, this court held that an officer's experience, training and common sense may be considered in determining whether his inferences from the facts at hand were reasonable. The reputation of an area is an articulable fact upon which an officer can rely and which is relevant in the determination of reasonable suspicion. Flight, nervousness, or a startled look may be a factor leading to a finding of reasonable cause to stop, within the context of La.C.Cr.P. art. 215.1. "Presence in a high crime area, coupled with other suspicious actions upon the approach of officers is sufficient to justify an investigatory stop." Id. at 497.
In its brief, the defense argues that the initial investigatory stop was unlawful because Corporal Vishnefski had no articulable facts to demonstrate a reasonable suspicion that defendant was involved in any criminal conduct. To the contrary, Corporal Vishnefski pointed out specific facts which, taken together with their rational inferences, reasonably supported the belief that criminal activity was occurring.
The Pendleton was known to the police as a high crime area including illegal drug activity. When the directed patrol unit approached in their vehicles, a lookout would warn those out front who would then run inside. Defendant acted surprised when the officers rounded the corner on foot and immediately put his hands in his pockets. Under these circumstances, there was ample reason for Corporal Vishnefski to stop and briefly detain defendant for "reasonable inquiries."
It is clear from Terry that an officer must independently articulate specific facts for both the stop and frisk. Although a reasonable stop is necessarily a predecessor to a reasonable frisk, it is not inevitable that every reasonable stop requires a frisk.
It is not necessary for an investigating officer to establish that a detained individual was more probably than not armed and dangerous in order to justify a patdown for weapons. "It is sufficient if the officer establishes a substantial possibility of danger." State v. Johnson, 32,384 (La.App.2d Cir.09/22/99), 748 So.2d 31, 34, citing State v. Lavigne, 95-0204 (La.App. 4th Cir.05/22/96), 675 So.2d 771, writ denied, 96-1738 (La.01/10/97), 685 So.2d 140. In Willis, supra, this court noted that "the jurisprudence correctly recognizes that in confronting persons suspected of drug dealing in many situations, the presence of a weapon and the potential for violence can be inferred." Willis, supra, at 497.
For the reasons stated above, i.e., the nature of the area, the lookouts, the startled look, and defendant's reaction, Corporal Vishnefski was justified in fearing that a weapon was on defendant's person. Defendant had quickly put his hands in his front pockets. This reasonably alarmed the officer who was justified to grab defendant's hands and brace him against the wall for a weapons search. The patdown revealed a large bulge with a metallic feel. Only by removing the bulge could the officer know that it was not a weapon. The patdown and removal of the bulge was reasonable under these circumstances.
After the stop and frisk, the officer found only keys, folded paper and the *607 twisted brown paper. Only by opening the brown paper was cocaine found.
The final inquiry is whether police officers may seize nonthreatening contraband detected during a protective patdown search of the sort permitted by Terry. The answer is clearly that they may, so long as the officers' search stays within the bounds marked by Terry. Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).
In Michigan v. Long, supra, police approached a man who had driven his car into a ditch and who appeared to be under the influence of some intoxicant. As the man moved to reenter the car from the roadside, police spotted a knife on the floorboard. The officers stopped the man, subjected him to a patdown search, and then inspected the interior of the vehicle for other weapons. During the search of the passenger compartment, the police discovered an open pouch containing marijuana and seized it. The supreme court upheld the validity of the search and seizure under Terry. It held first that, in the context of a roadside encounter, where police have reasonable suspicion based on specific and articulable facts to believe that a driver may be armed and dangerous, they may conduct a protective search for weapons not only of the driver's person, but also of the passenger compartment of the automobile. Of course, the protective search of the vehicle, being justified solely by the danger that weapons stored there could be used against the officers or bystanders, must be "limited to those areas in which a weapon may be placed or hidden." The Court then held: "If, while conducting a legitimate Terry search of the interior of the automobile, the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." Id. at 1050, 103 S.Ct. at 3481, 77 L.Ed.2d at 1220.
The Court in Long justified this latter holding by reference to the "plain view" doctrine. Under that doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object, i.e., if "its incriminating character [is not] `immediately apparent,'" the plain view doctrine cannot justify its seizure. Minnesota v. Dickerson, supra; Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).
In the present case, based on reasonable suspicion or belief, Corporal Vishnefski stopped and frisked defendant. He felt a metallic bulge which he feared was some sort of weapon. Although the bulge was not a weapon, it fortuitously yielded evidence of possession of contraband. Corporal Vishnefski was a ten-year veteran police officer and had worked the directed patrol unit for some time. Corporal Vishnefski knew from his experience that such brown paper was a cutoff corner of a grocery bag and commonly used to carry rocks of cocaine. Based upon this experience and his knowledge that illegal drug activity regularly transpired at this location, as well as the other circumstances warranting the initial intrusion, the officer had probable cause to believe that the paper contained contraband. He was not required to ignore what was obvious.

II. The trial court erred in ordering this indigent defendant to serve jail time in the event of his failure to pay a court ordered fine.
When the court imposed sentence it stated that defendant was to "serve three years, hard labor, credit for time served, balance is suspended, he'll be placed on two years active supervised probation ... *608 required to pay the court cost involved in this matter, or serve twenty-five days in the parish jail."
Although this court in the past had automatically deleted default jail time provisions from sentences involving indigents, the current trend is to remand for an indigency determination. See, e.g., State v. Moreau, 31,879 (La.App.2d Cir.03/31/99), 735 So.2d 717.
However, the question is premature. Defendant has not been called upon to pay costs. The Department of Corrections routinely asks local sheriffs, several weeks prior to a prisoner's release, whether the sheriff wants the prisoner returned for payment of fines and/or costs. That appears to be the more appropriate time for the defendant to challenge the order to pay costs and to demonstrate his inability to pay. Further, the balance of defendant's sentence was suspended. Whether he is now working and no longer indigent can be determined by the trial court.
The conviction and sentence are AFFIRMED.
STEWART, J., concurs in result only.