830 So.2d 440 (2002)
STATE of Louisiana, Appellee,
v.
Carroll COOPER, Appellant.
No. 36,472-KA.
Court of Appeal of Louisiana, Second Circuit.
October 23, 2002.
*443 Louisiana Appellate Project by Amy C. Ellender, for Appellant.
Richard Ieyoub, Attorney General, Walter E. May, Jr., District Attorney, Douglas L. Stokes, Jr., Assistant District Attorney, for Appellee.
Before WILLIAMS, STEWART and DREW, JJ.
DREW, J.
Carroll Cooper pled guilty to possession of crack cocaine, a violation of La. R.S. 40:967(C), reserving his right to appeal the adverse ruling on his Motion to Suppress. State v. Crosby, 338 So.2d 584 (La.1976). Although we find the stop justified, and the decision to frisk warranted, we must reverse, concluding from this record that the deputy's post-frisk search of the defendant's pocket, as well as his seizure of the contents therein, was predicated upon neither:
 Reasonable Suspicion that the defendant was armed, nor
 Probable Cause that contraband was concealed in Cooper's britches.
This well-meaning officer's removal of the rag (along with its concealed drug paraphernalia) violated the Fourth Amendment to the U.S. Constitution, La. Const Art. I, Section 5, and the guidelines established by Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and its progeny.

FACTS
This deputy, the only witness at the Motion to Suppress hearing, testified that:
 On September 20, 2001, at approximately 10:00 p.m., while on routine patrol in a Jackson Parish high crime area, the deputy observed an individual, later determined to be Carroll Cooper, first walking in the street, and then, minutes later, speaking with at least two other persons;
 After circling the block, the officer returned to the area and noticed the same individual walking quickly in the roadway, away from the others. Lurking nearby was Henry Sims, possessor of an extensive criminal record (though other than the judge calling him a felon in his ruling, no testimonial or demonstrative evidence reveals what type(s) of crimes are involved in Sims' recordmisdemeanors or felonies, with or without violence, with or without weapons);
 He stopped his patrol unit to talk to the defendant, who seemed to be in a hurry;
 Although cooperative, Cooper was shaking, jittery and nervous;
 The officer observed a bulge in Cooper's front right pants pocket;
 After asking for identification and questioning the subject as to the possession of any weapons (to which Cooper responded in the negative), he conducted a routine frisk, testifying that he was "looking for any weapons or contraband"[1]. Emphasis supplied.
 After patting down the bulge, described as being smaller than a baseball but larger than a golf ball, the deputy reached inside Cooper's pocket and partially pulled a cloth out, even though the initial pat-down had caused him no particular concern, and even though at the *444 hearing he couldn't recall if the bulge was either soft or hard;
 When the deputy partially pulled the rag from Cooper's pocket, a crack pipe fell out;
 As the deputy secured the crack pipe, Cooper pulled the rag completely out of his pocket and made a quick sliding motion with his hand;
 He looked on the ground near where Cooper was standing and saw a matchbox, which he seized and opened, discovering crack cocaine; and
 He then advised Cooper of his rights and placed him under arrest for possession of cocaine and possession of drug paraphernalia.

DISCUSSION
The Stop
La. C. Cr. P. article 215.1 has basically codified Terry v. Ohio, supra. This article provides that, in a public place, a law enforcement officer may stop a person whom he reasonably suspects is committing, has committed, or is about to commit an offense. A frisk may be conducted if the officer reasonably suspects that he is in danger. Further, a search for weapons may then be conducted if the officer reasonably suspects that the suspect is armed. Any dangerous weapon found during this process may be seized. La. C. Cr. P. art. 215.1.
To stop a person or a vehicle, the officer must be able to specifically articulate factors leading to his conclusion as to the existence of reasonable suspicion of criminal activity. Terry, supra.
Unfortunately, Louisiana's statutes and jurisprudence are replete with confusing usages of these basic standards/terms/ requirements/burdens of proof:
 Reasonable Suspicion of Criminal Activity is required to detain;
 Reasonable Suspicion of Danger is required to frisk;
 Reasonable Suspicion that the detainee is armed is required to search for a weapon;
 Probable Cause[2] is required to arrest, to search for contraband, or to stop a motorist so as to issue a traffic citation; and
 Proof beyond a reasonable doubt is required to convict.[3]
This basic terminology is frequently misstated. This lack of precision in our criminal justice nomenclature leads to confusion on the street and in the courtroom.
The jurisprudence of our state and nation concerning stops of citizens has become more conservative in recent years.
*445 We have been afforded ample jurisprudential guidelines as to the law of stops.[4]
This officer articulated sufficient data to show that at the moment of the stop he had reasonable suspicion of criminal activity: a high crime area,[5] late at night, a person walking quickly in the middle of the street itself,[6] proximity to a person with an extensive criminal record, etc. The stop was legal.
The Decision to Frisk
A lawful detention for questioning does not necessarily give the investigating officer the authority to conduct a frisk for weapons, absent reasonable suspicion of danger. And while an officer is never justified in conducting a pat-down for weapons unless the original detention itself was justified, a lawful detention for questioning does not necessarily give the officer the authority to conduct a pat-down for weapons. State v. Hunter, 375 So.2d 99 (La.1979). Here, the deputy's uncontradicted testimony as to the factors justifying the stop also tend to support his decision to frisk. With a known criminal 20 to 30 feet away from Cooper, and the abnormal demeanor of the subject (nervous, shaking, jittery), the officer's decision to frisk for weapons was reasonable, particularly when the officer apparently did not know the subject, as he desired Cooper to identify himself. Based on the deputy's nine years of experience as a law officer, and based on these undisputed observations and the inferences drawn therefrom, the officer had ample reasonable suspicion that he might be in danger. The initial decision to frisk was certainly justified, even though the officer admitted he was frisking for weapons or evidence. A frisk certainly may subsequently lead to a search for evidence; however officer protection is the sole allowable justification for a frisk.
It is not necessary for an investigating officer to establish that a detained individual was more probably than not armed and dangerous in order to justify a *446 pat-down for weapons. It is sufficient if the officer establishes a substantial possibility of danger. State v. Lavigne, 95-0204 (La.App. 4th Cir.5/22/96), 675 So.2d 771, writ denied, 96-1738 (La.1/10/97), 685 So.2d 140. This frisk was reasonable.
The Search
A frisk is a brief pat-down of the subject's outer clothing in order to protect the officer. The object of a frisk is to determine whether the officer is in danger from one armed with a dangerous weapon. Terry, supra.
The deputy reached into Cooper's pocket and pulled out the rag, apparently because he was curious as to what was in the bulge. This intrusion into Cooper's pocket was more than a frisk. It was an unreasonable search not justified by the facts outlined in the testimony from the state's one witness at the hearing on the Motion to Suppress.
Analysis
A. Was the rag legally removed so as to search for a weapon?
The officer admitted that his initial frisk did not disclose any information that led him to believe that the defendant was armed. Indeed, the officer responded in the negative when asked if his frisk revealed anything that caused him concern. He could not even recall if the bulge was hard or soft. The officer never articulated specific facts which led him to conclude that reasonable suspicion existed that Cooper was actually carrying a weapon.
The deputy further testified that, upon completing the initial frisk, "he wasn't in fear of his life for (sic) safety." Notwithstanding the prosecutor's subsequent attempts at coaching the witness, the state never showed that the deputy's frisk developed reasonable suspicion that the defendant was armed.
The reasonable suspicion of danger was initially present, but it never escalated to more after the initial frisk revealed nothing of concern to the officer except curiosity as to what was in the pocket.
The deputy in effect testified that neither his tactile nor visual observations caused him to have safety concerns. Thus, pulling out the rag to search for a weapon, under these facts, was unreasonable.
B. Was the rag legally removed to search for contraband?
Evidence discovered during a lawful investigatory frisk may be seized under the "plain feel" exception to the warrant requirement, as explained in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); State v. Willis, 31,561 (La.App.2d Cir.1/20/99), 728 So.2d 493.
Probable Cause, which is a higher burden of proof than reasonable suspicion, is required for an officer to search for contraband on the person of a detainee. Indeed this further intrusion requires that the frisking officer immediately conclude that probable cause exists as to the presence of contraband, before a search is valid. In other words, a frisk for weapons only requires reasonable suspicion of danger; a search for contraband requires satisfying the greater burden of probable cause. Knowledge of an officer's background is crucial for a court to determine whether he was qualified to make this substantial leap from reasonable suspicion of generalized danger which justifies a frisk, to the much higher burden of probable cause to believe the suspect is carrying contraband or other evidence, a burden which must be overcome for an officer to justify a search for same. See Dickerson, supra.
*447 The initial frisk did not reveal to this officer the nature of the bulge, its properties or contents. From this record, it appears that the deputy was simply curious, which is not a sufficient justification for him to search Cooper for contraband. This record is devoid as to the deputy's knowledge, training and experience, other than his 9 years in law enforcement. To this day, we do not know whether his first eight years were served in a civil or criminal capacity. We cannot approve the pulling out of the rag under these facts.
C. Did the defendant consent to the further search?
No.
D. The "Goose" Case
These instant facts and disposition are quite similar to those found in State v. Johnson, 32,384 (La.App.2d. Cir.9/22/99), 748 So.2d 31, where a Shreveport police officer made a legitimate stop and conducted a legitimate frisk (pat-down for weapons) of Johnson, feeling something which he could not identify in Johnson's right front pocket. The officer reached into Johnson's pocket and removed 2 folded one-dollar bills (later found to contain a small rock of crack cocaine). The officer could not articulate any physical attributes of the item which provided him with either reasonable suspicion that the object was a weapon, or probable cause that the item was contraband. We suppressed the drugs in the Johnson case, and we must suppress the drugs here.
E. Suppression
The crack pipe was only revealed after the illegal entry into the pocket to pull out the rag. All that flowed from this unreasonable search and seizure must be suppressed as fruits of the poisonous tree.[7] The later discovery of the additional drugs in the matchbox is not allowable as evidence, even as a product of a Search Incident to Arrest.[8] Under these facts, the subsequent disclosure of the contents of the matchbox resulted from a Search Incident to an Unlawful Arrest, which is unreasonable. Had Cooper been validly arrested (not the case here), a substantially contemporaneous search (for weapons or evidence) of his person and lunge space would have been authorized. See Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).
F. Conclusion
Both the Fourth Amendment as well as Article I, § V of the Louisiana Constitution protect individuals from unreasonable searches and seizures. This stop was reasonable. This initial brief frisk (pat-down for weapons) was reasonable. However, based on this record, we cannot find that reasonable suspicion ever existed that the subject was armed, so as to justify a further search of the pocket for a weapon; nor did the requisite probable cause ever manifest so as to justify a further search for and seizure of the contraband.

DECREE
For the foregoing reasons, the district court's denial of defendant's motion to suppress evidence seized is reversed and the motion is hereby granted. Accordingly, the defendant's conviction is set aside and the sentence is vacated. The case is remanded to the district court for further proceedings consistent with this opinion.
*448 REVERSED, AND MOTION TO SUPPRESS GRANTED, CONVICTION AND ADJUDICATION SET ASIDE, SENTENCE VACATED AND CASE REMANDED.
STEWART, J., concurs.
NOTES
[1] This reflects the officer's misunderstanding of the sole purpose of a frisk, the protection of the officer. Discovery of contraband is NOT an appropriate object of a frisk.
[2] Professor Rolando V. del Carmen of Sam Houston State University equates "probable cause" in the criminal context to the civil burden of "a preponderance of the evidence." CRIMINAL PROCEDURE Law and Practice, Third Edition, International Thomson Publishing, 1995. Others suggest that a "preponderance" is a more onerous burden than "probable cause." See U.S. v. Arvizu, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); Young Oil Company of Louisiana, Inc. v. Durbin, 412 So.2d 620 (La.App. 2d Cir. 1982). To accept that a preponderance is a mere" tipping of the scales," and that probable cause is a lesser burden than a preponderance of the evidence, leads to the unavoidable conclusion that arrests and searches may be forced on the citizenry when the officer or magistrate is less than 50% sure of the extant criminality. Surely not.
[3] Perhaps if everyone would stick to the basics, search and seizure would be easier to teach, to learn, and to enforce on the streets. As it is, many of our opinions speak of reasonable suspicion, reasonable belief, reasonable grounds, reasonable concern, reasonable cause, and reasonable cause to believe. Is anyone out there confused yet?
[4] In assessing the reasonableness of an investigatory stop, the court must balance the need to search and seize against the invasion of privacy the search and seizure entails. State v. Washington, 621 So.2d 114 (La.App. 2d Cir.1993), writ denied, 626 So.2d 1177 (La. 1993); State v. Tucker, 604 So.2d 600 (La. App. 2d Cir.1992), affirmed in part, reversed in part on other grounds, 626 So.2d 720 (La. 1993).

In reviewing the totality of circumstances, the officer's past experience, training and common sense may be considered in determining whether his inferences from the facts at hand were reasonable. State v. Jackson, 26,138 (La.App. 2d Cir.8/17/94), 641 So.2d 1081. The reputation of an area is an articulable fact upon which an officer can rely and which is relevant in the determination of reasonable suspicion. State v. Richardson, 575 So.2d 421 (La.App. 4th Cir.1991), writ denied, 578 So.2d 131 (La.1991). Flight, nervousness, or a startled look at the sight of a police officer may be one of the factors leading to a finding of reasonable cause to stop under La. C.Cr.P. art. 215.1. State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). Upon the approach of clearly-identifiable police officers, a person's presence in a high crime area, late at night, coupled with nervousness or flight or other suspicious actions consistent with criminality is sufficient to justify an investigatory stop. State v. Taylor. 363 So.2d 699 (La.1978); State v. Jackson, supra.
[5] One is tempted to imagine a "low-crime area." Does such exist? Perhaps a few high-dollar gated communities with moats, barbed wire and armed guards? Could it be that the term " high-crime area" is so over-used, and crime is so rampant, that a better definition of same today may be the entire State of Louisiana? Or is it just where the poor folks live? Is this fair? Is it legal?
[6] See State v. Willis, 31,561 (La.App.2d Cir.1/20/99), 728 So.2d 493
[7] Wong Sun v. U.S., 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)
[8] "Search Incident to Arrest" is a jurisprudential doctrine which allows a search for weapons or evidence pursuant to a valid arrest. See Chimel, supra.