980 So.2d 243 (2008)
STATE of Louisiana, Appellee,
v.
Michael Vernard WHITEHEAD, Appellant.
No. 42,677-KA.
Court of Appeal of Louisiana, Second Circuit.
April 2, 2008.
Rehearing Denied April 24, 2008.
*245 Ross S. Owen, for Appellant.
J. Schuyler Marvin, District Attorney, John M. Lawrence, Robert R. Smith, Assistant District Attorneys, for Appellee.
Before WILLIAMS, STEWART and LOLLEY, JJ.
STEWART, J.
The defendant, Michael Vernard Whitehead, was charged by bill of information with possession of Schedule II CDS, cocaine, with intent to distribute, but the jury convicted him of the responsive verdict of possession of Schedule II CDS, cocaine. The defendant admitted to being a fourth felony offender, and the trial court sentenced him to 30 years at hard labor without benefit of parole, probation or suspension of sentence, with credit for time served. The defendant now appeals, urging two assignments of error. Finding merit in one of the assignments raised, we reverse the defendant's conviction and sentence.

FACTS
On December 30, 2005, the defendant was arrested after a rock of crack cocaine *246 was found in his pocket during an investigatory stop. During the night in question, Sergeant Richard McGee, the unit supervisor of the Bossier City Police Department's Street Crimes Interdiction Unit, was on patrol along with Bossier City Police Officers Adam Johnson and Darren Barkley using three different squad cars.
Officer McGee observed the defendant "engaged with a white female" on Scott Street. This was reportedly a "high crime" area, and Officer McGee decided to watch Mr. Whitehead and the unknown female. After watching the couple enter Mr. Whitehead's house and reemerge, Officer McGee requested other officers come to the scene. Officer McGee testified that as he and the other officers pulled up, the defendant and the female got in her car and were "shuffling around." The officers removed the defendant and the female from the car for officer safety. Officer McGee testified that he dealt with the white female while Officer Johnson patted down the defendant.
Officer Johnson testified that the defendant kept trying to put his hands in his pockets and that as he felt the outside of the defendant's right front pants pocket, he felt an object that resembled a razor blade. Officer Johnson testified that because of the defendant's past history, he was very cautious and peered inside the right pants pocket before reaching inside to ensure the razor blade was not sticking out in a way that would cut him. Officer Johnson then testified that the metal object was a little cross, but that he observed a white residue that he suspected to be crack cocaine. He did not inform the defendant of this discovery at the time due to concern for officer safety.
Officer Johnson testified that later, when he had more officers in the immediate area, he then retrieved the white substance from the defendant's pocket. Pursuant to a field test, the white substance tested positive for cocaine. The defendant was then arrested and taken to jail. During his booking at the jail, a plastic bag containing 24 rocks of crack cocaine fell out of his pants.
On the day of the trial, the defendant filed an oral motion to suppress the evidence found in the search because the existence of the videotapes from the search and arrest had just been provided the day before trial. After hearing arguments from counsel, the trial court denied the motion to suppress. Based upon evidence presented at trial, the jury convicted the defendant of the responsive charge of possession of cocaine.

DISCUSSION
The defendant argues that the trial court erred in denying his motion to suppress, because there was no reasonable suspicion to believe that he was engaged in criminal activity in order to justify an investigatory stop under Terry, infra. The defendant contends that there was no evidence of a hand-to-hand transaction between the defendant and the white female. The state alleges that suspicion of selling drugs, among other circumstances, provided reasonable suspicion to justify the investigatory stop.
A trial court's decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Normandin, 32,927 (La.App. 2d Cir.12/22/99); 750 So.2d 321. When reviewing a motion to suppress, it is important to determine who has the burden of proof and the proper standard of review.
According to La. C. Cr. P. art. 703(D), the state bears the burden of proof when a defendant files a motion to suppress *247 evidence obtained without a warrant. The entire record, including the testimony at trial, is reviewable for determining the correctness of a ruling on a pre-trial motion to suppress. State v. Young, 39,546 (La.App. 2d Cir.3/2/05), 895 So.2d 753, 757. Great weight is placed upon the trial court's determination, because it had the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Crews, 28,153 (La.App. 2d Cir.5/8/96), 674 So.2d 1082, citing State v. Jackson, 26,138 (La.App. 2d Cir.8/17/94), 641 So.2d 1081. Accordingly, this court will review the district court's ruling on a motion to suppress under the manifest error standard in regard to factual determinations, as well as credibility and weight determinations, while applying a de novo review to its findings of law. State v. Hemphill, 41,526 (La.App. 2d Cir.11/17/06), 942 So.2d 1263, citing State ex rel. Thibodeaux v. State, 2001-2510 (La.3/8/02), 811 So.2d 875.
The Fourth Amendment of the Constitution of the United States guarantees the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. U.S. Const. Amend. IV. This amendment is made enforceable against the states through the Fourteenth Amendment. Article I, Section 5 of the Louisiana Constitution guarantees the right of the people to be secure in their person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. Searches and seizures conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment, except under a few specifically established and well-delineated circumstances. As this court explained in State v. Furlow, 34,339 (La.App. 2d Cir.2/28/01), 780 So.2d 602, 605-606, writ denied, XXXX-XXXX (La.3/15/02), 811 So.2d 895, one such exception includes investigatory stops by law enforcement and pat-downs for officer safety:
One such exception was recognized in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which held that "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot . . .," the officer may briefly stop the suspicious person and make "reasonable inquiries" aimed at confirming or dispelling his suspicions. Id. at 30, 88 S.Ct. at 1884, 20 L.Ed.2d at 911.

Terry further held that, "[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," the officer may conduct a pat-down search "to determine whether the person is in fact carrying a weapon." 392 U.S. at 24, 88 S.Ct. at 1881, 20 L.Ed.2d at 907. Such a protective search based on reasonable suspicion must be strictly "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." Terry, supra, at 26, 88 S.Ct. at 1882, 20 L.Ed.2d at 908. If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under Terry and its fruits will be suppressed. Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).
Thus, Terry recognizes that a "stop" is a seizure of the person and a "frisk" is a search; however, because a "stop" is more limited than an arrest and a "frisk" less intrusive than a full-blown search, such actions, though not to be undertaken arbitrarily, may be reasonable within the contemplation of the Fourth Amendment upon *248 a predicate less substantial than "probable cause." "Stop and frisk" is not to be judged by the probable cause necessary for a warrant but by the reasonableness clause of the Fourth Amendment. The measure is reasonableness of belief or suspicion.
The Louisiana legislature codified the standard for investigatory stops and pat-downs for officer safety as set forth in Terry, supra, in La. C. Cr. P. art. 215.1. In regard to an investigatory stop, Subsection A states that "[a] law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions."
Reasonable suspicion to justify an investigatory stop under Terry, supra, is less than probable cause; however, it requires the officer to have "articulable knowledge of particular facts which, in conjunction with reasonable inferences drawn therefrom, provide reasonable grounds to suspect the detainee of criminal activity." State v. Knowles, 40,324 (La. App. 2d Cir.12/30/05), 917 So.2d 1262. Articulable facts from which an officer can rely and which are relevant in the determination of reasonable suspicion include the reputation of an area, nervous or startled behavior at the sight of a police officer, and unprovoked flight when approached by law enforcement. State v. Cooper, 36,472 (La.App. 2d Cir.10/23/02), 830 So.2d 440, 445, fn. 4. When assessing the validity of the investigative stop, the critical inquiry focuses on the officer's knowledge at the time of the stop. State v. Knowles, 917 So.2d at 1268. Further, presence in a high crime area, coupled with flight, nervous behavior, or other suspicious actions upon approach of law enforcement officers, is enough to justify an investigatory stop. State v. Adams, XXXX-XXXX (La.1/14/03), 836 So.2d 9.
Officer McGee testified that law enforcement had received citizen complaints that the defendant was flagging down cars traveling on Scott Street to solicit drug sales and taking them inside his home to make the narcotics transaction. Officer McGee testified that he had knowledge of the defendant operating in this pattern while making a narcotics sale to an undercover officer. Officer McGee also testified that he observed the defendant acting in a manner similar to this pattern when he saw the defendant talking to a woman on Scott Street and then subsequently going inside his house with her. Officers testified that this investigatory stop took place in a high crime area and that the defendant and the woman looked startled when the police drove up, that they got inside her vehicle quickly, and that their movement inside the vehicle appeared nervous.
Considering that the defendant was under investigation for suspicion of selling drugs in a high crime area, that he behaved in a nervous manner, and that he appeared as though he might be trying to evade law enforcement when he got inside the vehicle quickly, there was reasonable suspicion to justify the investigatory stop under Terry, supra. Accordingly, the trial court properly denied the defendant's motion to suppress on the ground that the officers lacked reasonable suspicion to justify the investigatory stop. Therefore, this assignment is without merit.
In his second assignment of error, the defendant argues that the trial court erred in denying his motion to suppress the evidence obtained during the search because it was a full-blown search rather than a pat-down for officer safety. The state argues that suspicion of drug dealing is an articulable fact that would justify a pat-down *249 for officer safety because drug dealers are known to have a violent lifestyle.
As discussed briefly above, when an officer making an investigatory stop under Terry, supra, is justified in believing that the person under investigation at close range is armed and presently dangerous to the officer or to others, he may conduct a pat-down search to determine if the person is carrying a weapon. State v. Furlow, supra.
Subsection B of La. C. Cr. P. art. 215.1 codified the Terry jurisprudence in regard to the pat-down search:
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably believes the person possesses a dangerous weapon, he may search the person.
The pat-down search must be limited to what is necessary for the discovery of weapons and, if it goes beyond that limit, the fruits of the search will be suppressed. State v. Furlow, 780 So.2d at 605, citing Terry, supra.
While conducting a pat-down search for weapons, officers may seize contraband found during the pat-down under the "plain view" doctrine if they are in a lawful position to view it or the "plain feel" doctrine if the unlawful nature of the object is immediately apparent:
In Minnesota v. Dickerson, 463[508] U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the U.S. Supreme Court established a "plain-feel" exception to the requirement that a warrant be obtained for a seizure during a patdown search of contraband other than weapons. The court held in Michigan v. Long, 463 U.S. 1032, 1050, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983), that the seizure of contraband other than weapons during a lawful Terry search was justified by reference to the Court's cases under the "plain-view" doctrine. That doctrine  which permits police to seize an object without a warrant if they are lawfully in a position to view it, if its incriminating character is immediately apparent, and if they have a lawful right to access to it  has an obvious application by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search. Thus, if an officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes it identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons. Cf. e.g., Illinois v. Andreas, 463 U.S. 765, 771, 103 S.Ct. 3319, 3324, 77 L.Ed.2d 1003 [(1983)]. If the object is contraband, its warrantless seizure would be justified by the realization that resort to a neutral magistrate under such circumstances would be impracticable and would do little to promote the Fourth Amendment's objectives. Cf., e.g., Arizona v. Hicks, 480 U.S. 321, 326-327, 107 S.Ct. 1149, 1153-1154, 94 L.Ed.2d 347 (1987).
Even so, "If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object, i.e., if `its incriminating character [is not] "immediately apparent,"' the plain view doctrine cannot justify its seizure." State v. Furlow, 780 So.2d at 607, quoting Minnesota v. Dickerson, supra, Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).
*250 This court has previously recognized that when confronting those suspected of drug dealing, law enforcement officers may infer the presence of a weapon and the potential for violence. State v. Furlow, 780 So.2d at 606. Thus, given the testimony that the investigatory stop took place in a high crime area, that the defendant was under suspicion for selling drugs, and that officers had knowledge of the defendant's past criminal behavior, there was a reasonably objective basis for the officers to believe that their safety was in danger. Accordingly, the decision to conduct a pat-down for officer safety under Terry, supra, was appropriate.
Officer Johnson testified that he felt the bulge that could have been a razor blade in the front right pants pocket and that he peered inside the pocket before putting his hand inside to make sure that the suspected blade would not cut him. The officer testified that he saw a residue that he believed to be from crack cocaine when he looked inside the pocket, which afforded him probable cause to retrieve the contraband.
Pursuant to La. C. Cr. P. art. 215.1(B) and this court's jurisprudence on Terry, supra, Officer Johnson would be justified in searching the defendant's right front pocket for a weapon after a pat-down of that pocket led him to believe that there was a bulge in the pocket resembling a razor blade. Upon peering into the pocket, Officer Johnson would be in a lawful position from which to view the crack cocaine residue under the "plain view" doctrine. This would then provide probable cause to retrieve the rock of crack cocaine and subsequently, arrest the defendant for possession of cocaine.
However, the video admitted as Joint Exhibit Two, which showed Officer Johnson conducting a pat-down of the defendant, contradicts Officer Johnson's testimony. The videotape initially shows the defendant standing next to a vehicle and smoking a cigarette. The videotape shows Officer Johnson walk up behind the defendant, instruct the defendant to put his hands on the car, and pat down the right front pocket of the defendant's pullover. After feeling the exterior of that pullover pocket, Officer Johnson puts his hand inside that pullover pocket to retrieve the items inside. The videotape then shows Officer Johnson putting his hand inside the defendant's right pants pocket, without first patting down the right pants pocket, and then shining a flashlight into the pocket. The videotape shows Officer Johnson move to the defendant's left side, where he then asks the defendant if there is a razor blade inside his left pocket. The videotape then shows Officer Johnson shaking the defendant's clothes, looking between the defendant's t-shirt and pullover, taking off the defendant's shoes, and tugging at his short pants.
La. C. Cr. P. art. 215.1 and Terry, supra, require that a pat-down of the outer clothing be done before any other search for a weapon is made. After reviewing the video, we cannot say that the officer conducted a pat-down search of the defendant's outer clothing prior to putting his hand inside the defendant's right pants pocket and shining a flashlight into the pocket. Thus, the search of the pocket, without first conducting a pat-down of that pocket, exceeded the scope of a proper Terry pat-down for officer safety.
Counsel for the defendant conceded at the hearing on the motion to suppress that there had been a pat-down of that pocket. Even assuming that there was a pat-down of that front right pants pocket, Officer Johnson would not have been entitled to search the pocket with his flashlight after putting his hand in the pocket, because he would have already determined at that *251 point that the defendant did not have a weapon there. The jurisprudence is clear that the pat-down search must be limited to what is necessary for the discovery of weapons and, if it goes beyond that limit, the fruits of the search will be suppressed. State v. Furlow, 780 So.2d at 605, citing Terry, supra.
Further, neither "plain view" nor "plain feel" will justify the seizure of contraband if its incriminating character was not immediately apparent upon sight or touch. State v. Furlow, 780 So.2d at 607, quoting Minnesota v. Dickerson, supra, Horton v. California, supra. Thus, even if Officer Johnson had conducted a pat-down of that pocket, the secondary visual search with a flashlight exceeded the scope of the Terry pat-down, because he would have already determined that the pocket did not contain a weapon.
Considering the evidence of the videotape, the trial court committed manifest error in denying the defendant's motion to suppress the evidence obtained in the search, because the videotape indicates that the search of the defendant's front right pants pocket exceeded the scope of the Terry pat-down and "amounted to the sort of evidentiary search that Terry expressly refused to authorize. . . ." Minnesota v. Dickerson, 508 U.S. at 378, 113 S.Ct. at 2139.
Any evidence seized or recovered as a result of the unconstitutional seizure and search must be suppressed. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). Because the rock of crack cocaine found in that pocket provided the probable cause to arrest the defendant for possession of cocaine, the subsequent discovery of crack cocaine at the police station must also be suppressed as fruits of the poisonous tree. State v. Cooper, 830 So.2d at 447, citing Wong Sun v. U.S., supra. With the contraband suppressed, the defendant's conviction and sentence must be reversed. Therefore, this assignment has merit.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are reversed.
REVERSED.
APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, GASKINS, CARAWAY and LOLLEY, JJ.
Rehearing denied.