GASKINS, J.
 

 hThe defendant, Joe Ellis Marshall, entered a Crosby
 
 [1]
 
 plea of guilty to possession of crack cocaine with intent to distribute, in violation of La. R.S. 40:967(A)(1), reserving his right to appeal the denial of his motion to suppress. He was sentenced to the maximum term of imprisonment, 30 years at hard labor, with the first two years to be served without benefit of parole, probation or suspension of sentence. The trial court also imposed a fine of $50,000, plus court costs, or, in default of payment thereof, 60 days in jail. We affirm the defendant’s conviction and sentence.
 

 FACTS
 

 On June 4, 2009, the Shreveport Police Department was conducting a city-wide “trooping operation.” The purpose of this operation was to check high-crime areas where open-air narcotics sales were prevalent. Police officers encountered a group of men including the defendant near an apartment complex in the Cedar Grove area where multiple shootings, stabbings and drug arrests had occurred. Upon seeing Agent Keith Knox and another officer approach, the men began to move away from them in a suspicious manner. After the defendant made a furtive gesture toward his waistband, Agent Knox handcuffed him. While searching the defendant for weapons, the officer felt a pill bottle in the defendant’s pants pocket. Agent Knox removed the transparent bottle, which contained baggies of crack cocaine.
 

 The defendant was arrested and charged with one count of possession of crack cocaine with intent to distribute, a violation of La. R.S. |240:967(A)(1). He filed a motion to suppress, in which he alleged that the search of his person conducted by the police was unconstitutional.
 

 The hearing on the motion to suppress was set immediately before trial. Following a hearing at which Officer Knox testified, the trial judge denied the motion to suppress. Instead of proceeding to trial, the defendant then chose to enter a
 
 Crosby
 
 
 *1109
 
 plea which reserved his right to appeal the denial of his motion to suppress. No agreement was reached as to sentence but the trial court ordered a presentence investigative (PSI) report. The state declined to agree that it would not file a habitual offender bill against the defendant.
 

 On September 27, 2010, the defendant was sentenced to the maximum sentence of 30 years at hard labor, the first two years of which were to be served without benefit of parole, probation or suspension of sentence. A fine of $50,000, plus court costs, was also imposed; in lieu of payment, the defendant was ordered to serve 60 days. The court directed that this sentence be served concurrently with any other sentence he might be ordered to serve.
 
 [2]
 
 The defendant’s motion to reconsider sentence was denied.
 

 The defendant appealed, raising two assignments of error.
 

 MOTION TO SUPPRESS
 

 In his first assignment of error, the defendant argues that the trial court erred in denying his motion to suppress. He contends that the search of his person was unjustified as the officer did not have a reasonable belief |sthat the defendant was armed and dangerous. The defendant also argues that the item recovered was merely “a common, everyday prescription bottle” which was not immediately recognizable as contraband or a weapon.
 

 In response, the state asserts that the search was properly conducted as part of a protective search for officer safety. The state further contends that'the bottle containing the cocaine was located when the officer felt the bottle (plain feel doctrine) and recognized that it could contain a weapon or contraband. Once he removed the bottle, he was able to see that it contained contraband without opening it (plain view doctrine). The state argues that it proved the officer had a reasonable suspicion based on the totality of the circumstances to justify the search.
 

 Law
 

 The right of every person to be secure in his person, houses, papers, and effects against unreasonable searches and seizures is guaranteed by the Fourth Amendment to the United States Constitution and Article I, § 5 of the 1974 Louisiana Constitution. A warrantless search is unreasonable unless the search can be justified by one of the narrowly drawn exceptions to the warrant requirement.
 
 State v. Thompson,
 
 2002-0333 (La.4/9/03), 842 So.2d 330.
 

 Under the Fourth Amendment, a police officer may briefly detain an individual for investigative purposes if the officer has a reasonable and articulable suspicion that the individual has committed or is about to commit a crime.
 
 Terry v. Ohio,
 
 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968);
 
 State v. Boyer,
 
 2007-0476 (La.10/16/07), 967 So.2d 458. In | 4determining whether the police possessed the requisite minimal level of objective justification for an investigatory stop based on reasonable suspicion of criminal activity, reviewing courts must look at the totality of the circumstances of each case, a process which allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person. In reviewing the totality of circumstances, the reputation of an area is an articulable fact upon which a police officer may legitimately rely and is therefore relevant in the determination of
 
 *1110
 
 reasonable suspicion.
 
 State v. Temple,
 
 2002-1895 (La.9/9/03), 854 So.2d 856. Presence in a high crime area, coupled with nervousness or flight or other suspicious actions upon approach of officers, is sufficient to justify an investigatory stop.
 
 State v. Willis,
 
 31,561 (La.App.2d Cir.1/20/99), 728 So.2d 493.
 

 The Louisiana legislature codified the standard for investigatory stops and pat-downs for officer safety as set forth in the
 
 Terry
 
 case in La. C. Cr. P. art. 215.1. In pertinent part, La. C. Cr. P. art. 215.1 provides:
 

 A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
 

 B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
 

 Several recent Louisiana Supreme Court cases have allowed cuffing (without probable cause to make an arrest) during a frisk situation, for |5officer safety. See
 
 State v. Adams,
 
 2001-3231 (La.1/14/03), 836 So.2d 9;
 
 State v. Porche,
 
 2006-0312 (La.11/29/06), 943 So.2d 335; and
 
 State v. Palmer,
 
 2009-0044 (La.7/1/09), 14 So.3d 304.
 

 Evidence discovered during a lawful investigatory frisk may be seized under the “plain feel” exception to the warrant requirement, as explained in
 
 Minnesota v. Dickerson,
 
 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993);
 
 State v. Johnson,
 
 32,384 (La.App.2d Cir.9/22/99), 748 So.2d 31. According to
 
 Minnesota v. Dickerson, supra,
 
 the “plain view” doctrine — which permits police to seize an object without a warrant if they are lawfully in a position to view it, if its incriminating character is immediately apparent, and if they have a lawful right of access to it — has an obvious application by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search. Thus, if an officer lawfully pats down a suspect’s outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect’s privacy beyond that already authorized by the officer’s search for weapons. Just as the “plain view” doctrine requires that an object’s incriminating character be immediately obvious when seen, the “plain feel” doctrine requires the tactile discovery of an object whose contour or mass makes its identity immediately apparent.
 
 State v. Johnson, supra.
 

 La. C. Cr. P. art. 703(D) governs the burden of proof when a defendant files a motion to suppress evidence obtained without a warrant:
 

 D. On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the 1 defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant.
 

 A trial court’s decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. When reviewing a motion to suppress, it is important to determine who has the burden of proof and the proper standard of review.
 
 State v.
 
 
 *1111
 

 Whitehead,
 
 42,677 (La.App.2d Cir.4/2/08), 980 So.2d 248,
 
 writ denied,
 
 2008-1096 (La.1/9/09), 998 So.2d 713. When the constitutionality of a warrantless search or seizure is placed at issue by a motion to suppress the evidence, the state bears the burden of proving that the search and seizure were justified pursuant to one of the exceptions to the warrant requirement.
 
 State v. Johnson, supra.
 

 Great weight is placed upon the trial court’s ruling on a motion to suppress in regard to the finding of facts because it had the opportunity to observe the witnesses and weigh the credibility of their testimony.
 
 State v. Crews,
 
 28,153 (La.App.2d Cir.5/8/96), 674 So.2d 1082. This court reviews a district court’s ruling on a motion to suppress under the manifest error standard for factual determinations as well as credibility and weight determinations while applying a
 
 de novo
 
 review to findings of law.
 
 State v. Hemphill,
 
 41,526 (La.App.2d Cir.11/17/06), 942 So.2d 1263,
 
 writ denied,
 
 2006-2976 (La.3/9/07), 949 So.2d 441.
 

 Testimony
 

 At the suppression hearing, Agent Knox was the only witness to testify. He informed the court that he had been a police officer for 13 years; |7six of those years had been in the narcotics division of the Office of Special Investigations (OSI). He had attended many classes and training schools pertaining to narcotics investigations. The OSI department in which he worked was responsible for hundreds of arrests each year. Personally, he had been involved in hundreds of investigations and had made hundreds of arrests.
 

 Agent Knox testified that he and another officer drove up to the entrance of an apartment complex in Cedar Grove in a police vehicle which, while unmarked, had a spotlight and push bumper. According to Agent Knox, this type of vehicle was recognizable to persons in the narcotics trade as a police vehicle. When the two officers exited their vehicle, they were dressed in the police department’s tactical uniforms, i.e., black BDUs
 
 [3]
 
 with black t-shirts that said “Shreveport Police” and load-bearing vests with “Police” on the front and back.
 

 Upon seeing the officers, several men seated outside the apartment building immediately rose and began to walk away in a hurried manner while looking over their shoulders. They went into an entryway and gathered in the hallway of the common area of the apartment complex. According to Agent Knox, there were six or seven men.
 

 One of these men was the defendant, who immediately reached to his waistband and pocket area. Agent Knox testified that the defendant looked like he was trying to conceal something. Under the circumstances, the defendant’s movement caused Agent Knox to fear that the defendant had a Rweapon and that he and the other officer were in danger. The other officer was still outside with other individuals. As the only officer in the immediate area, Agent Knox went directly to the defendant and secured his hands, then handcuffed him. He patted down the defendant to determine if he was, in fact, armed. While he did not find any weapon, Agent Knox felt a prescription pill bottle in the defendant’s left pants pocket. Agent Knox testified that, as an experienced narcotics officer, he knew that drug dealers commonly use pill bottles to conceal not just narcotics, but also potential weapons like razor blades. After retrieving the transparent bottle from the defendant’s pocket, Agent Knox observed that it held
 
 *1112
 
 multiple baggies containing what appeared to be crack cocaine.
 

 Agent Knox testified that he advised the defendant of his
 
 Miranda
 
 rights. After the officers escorted the defendant through the crowd and to their vehicle, the defendant stated that one of the men in the hallway handed the bottle to him and that he stuffed it in his pocket. Subsequent examination by the crime lab determined that the 44 baggies in the bottle contained cocaine.
 

 Discussion
 

 The testimony at the suppression hearing established that the defendant acted suspiciously immediately upon seeing the uniformed officers. He and his companions got up and began to scurry away from the officers while looking back at them. The officers were outnumbered in an area noted for violence and crime. After Agent Knox became separated from his partner, he observed the defendant making a hand gesture near his 19waistband or pocket. Concerned that the defendant might be armed and that his own safety was compromised, the officer handcuffed the defendant and patted him down. These actions were permissible. See
 
 Terry, supra,
 
 and its progeny, as well as La. C. Cr. P. art. 215.1. See also
 
 Adams, supra; Porche, supra;
 
 and
 
 Palmer, supra.
 

 Agent Knox felt what he recognized as a pill bottle in the defendant’s pocket. Wary because his years of experience as a police officer had taught him that such bottles often contained razor blades which could be used as weapons, as well as illegal contraband, he removed the bottle from the defendant’s pocket. This action was also permissible pursuant to the “plain feel” doctrine. See
 
 Minnesota v. Dickerson, supra.
 
 Agent Knox testified that the bottle was transparent and that he could see in it. Thus, he did not have to open it or otherwise manipulate it to ascertain that it contained contraband, i.e., crack cocaine. Pursuant to the “plain view” doctrine, this was likewise proper.
 

 Finding that the police officer’s actions were within the permissible bounds of the law, we hold that the trial court acted correctly in concluding that the state carried its burden of proof and denying the defendant’s motion to suppress.
 

 This assignment of error is meritless.
 

 EXCESSIVE SENTENCE
 

 In his second assignment of error, the defendant argues that the trial court imposed an excessive sentence.
 

 |10The test imposed by the reviewing court in determining the exces-siveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article.
 
 State v. Smith,
 
 433 So.2d 688 (La.1983);
 
 State v. McDaniel,
 
 42,926 (La.App.2d Cir.1/9/08), 974 So.2d 146. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation.
 
 State v. Jones,
 
 398 So.2d 1049 (La.1981);
 
 State v. Haley,
 
 38,258 (La.App.2d Cir.4/22/04), 873 So.2d 747,
 
 writ denied,
 
 2004-2606 (La.6/24/05), 904 So.2d 728. There is no requirement that specific matters be given any particular weight at sentencing.
 
 State v. Jones,
 
 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392,
 
 writ denied,
 
 2000-1467 (La.2/2/01), 783 So.2d 385;
 
 State v. McDaniel, supra.
 
 The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or
 
 *1113
 
 mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1.
 
 State v. Lanclos,
 
 419 So.2d 475 (La.1982);
 
 State v. Robinson,
 
 45,372 (La.App.2d Cir.6/23/10) 42 So.3d 1036.
 

 Second, a sentence violates La. Const, art. I, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a ^purposeless and needless infliction of pain and suffering.
 
 State v. Smith,
 
 2001-2574 (La.1/14/03), 839 So.2d 1;
 
 State v. McDaniel, supra.
 
 A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice.
 
 State v. Weaver,
 
 2001-0467 (La.1/15/02), 805 So.2d 166;
 
 State v. McDaniel, supra.
 

 As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses.
 
 State v. McKinney,
 
 43,061 (La.App.2d Cir.2/13/08) 976 So.2d 802. The trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion.
 
 State v. Williams,
 
 2003-3514 (La.12/13/04), 893 So.2d 7.
 

 According to La. R.S. 40:967(B)(4)(b), the sentencing exposure for possession of cocaine with intent to distribute is a term of imprisonment at hard labor for not less than two years nor more than 30 years, with the first two years being without benefit of parole, probation, or suspension of sentence. Additionally, a fine of not more than $50,000 may be imposed.
 

 Prior to imposing sentence, the trial court stated that it had considered the sentencing factors, including the defendant’s extensive criminal record. The trial court had the benefit of a PSI report which detailed not only the defendant’s criminal history, but also his social and work history. Review of the record and the PSI report reveals that between 1971 and 2009, the defendant had numerous misdemeanor convictions and 10 felony | i2convictions. As a result, the defendant was eligible for a habitual offender bill of information and prior to sentencing, the state announced that it was prepared to file one. However, fortunately for the defendant, the state elected to not file the bill after the trial court imposed the instant sentence.
 

 Given the defendant’s phenomenally extensive criminal record and his complete failure at any sort of rehabilitation during his lengthy criminal career, we do not find the imposition of the maximum sentence for the instant offense to be excessive for this defendant. Clearly the defendant— who was 57 years old when he pled guilty in July 2010 — is a career criminal who refuses to pursue a livelihood that does not involve breaking the law on a regular basis. The imposition of the maximum sentence upon this offender was fully supported by the record.
 

 This assignment of error lacks merit.
 

 CONCLUSION
 

 The defendant’s conviction and sentence are affirmed.
 

 AFFIRMED.
 

 [1]
 

 .
 
 State v. Crosby,
 
 338 So.2d 584 (La.1976).
 

 [2]
 

 . Prior' to sentence, the defendant tried unsuccessfully to withdraw his guilty plea.
 

 [3]
 

 . Battle dress uniforms.