410 So.2d 1092 (1982)
STATE of Louisiana
v.
Hilton J. WRIGHT and Joel Morrison.
No. 81-KA-1938.
Supreme Court of Louisiana.
March 1, 1982.
*1093 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Thomas Chester, Asst. Dist. Attys., for plaintiff-appellee.
Bernard S. Dolbear, Ronald J. Harris, New Orleans, for defendant-appellant.
SHORTESS, Justice Ad Hoc.[*]
Hilton J. Wright and Joel Morrison were charged by bill of information with the *1094 armed robbery of Robert Hingle on October 14, 1978, at Thorning's Pharmacy in the Algiers section of New Orleans, a violation of La.R.S. 14:64. Both defendants were arraigned in February of 1979 and pled not guilty. Wright and Morrison filed motions to suppress identification, which were denied. After trial by a 12-person jury, defendants were both found guilty as charged. Subsequently, the State filed multiple bills against each defendant. Morrison was sentenced as a second offender to serve forty years at hard labor with the Department of Corrections. Wright was also determined to be a second offender and was sentenced to serve forty years at hard labor. From these convictions and sentences, defendants appeal.
Around 10:00 a. m. on October 14, 1978, Thorning's Pharmacy was robbed by three armed black men who wore masks or silk stockings over their faces. One of the robbers was tall, slender and dark-skinned and wore a green army fatigue jacket over blue jeans. He held a red bandanna or handkerchief over his face up to his eyes. Another robber was short, slender, and lighter skinned with rough complexion and wore a stocking over his face. The third robber could not be identified and was never found. Three employees were at the pharmacy at the time of the robbery: Robert Hingle, the pharmacist; Mrs. Edward O'Keefe, a clerk; and Mrs. Olivia Macklin, a delivery person. None were able to get a clear enough look at the robbers' faces to positively identify either Wright or Morrison at trial.
Initially, Hingle was told to lie down on the floor. Then he was ordered to get Talwin and Pyrobenzamine tablets, which he kept in the back of the pharmacy. When he got the requested drugs he was then told to get Preludin and finally Valium. When he returned from the back with the Valium, the robbers were gone.
Just prior to the robbery, Robert and Marie Latzenhiser, husband and wife, were in their car stopped at the red light at the intersection of Burman and Newton right in front of Thorning's. Their attention was drawn to two suspicious black men standing near Thorning's door staring at them. The men watched the Latzenhisers until the light turned green and they drove away. Only then did the men enter the pharmacy. The Latzenhisers noticed that the taller of the two men was wearing an army field jacket, army fatigue boots and blue jeans. The shorter man had on a grayish hat, a pinstripe suit and vest, and had a rough, scarred complexion. He had a big gold earring in his left ear. The Latzenhisers were so impressed by the unusual behavior of the two men that they thought of calling the police, but being unsure, went on to their destination a short distance away. They returned minutes later and saw a police car in front of Thorning's. They stopped and told the investigating officers what they had seen. Thereafter, in photographic and/or physical line-ups, Marie Latzenhiser identified both Wright and Morrison as the two men she had seen in front of Thorning's. Robert Latzenhiser identified Hilton Wright. Both defendants were identified by the Latzenhisers at trial.
Jane Jones, her mother and her sister were stopped at a red light at the corner of Burman and Newton around 10:00 on the same morning, when they saw three men run out of Thorning's. One was tall and wore a green army jacket. Another was short and wore a blue suit and hat. When the light changed, the Jones' ladies passed the three men, pulled over to the side of the street, saw them jump into a yellow car which was half a block away and drive off. As the car, a 1953 four-door yellow Buick, passed them, Jane Jones wrote the license number in her checkbook. The ladies then went to the drugstore and turned this information over to a police officer. A description of the yellow car and its license number was then broadcast over the police radio.
Clifford Burnham, an officer with the New Orleans Police Department, testified *1095 that he received the description of the yellow vehicle and recognized it as belonging to Joel Morrison. Burnham and his partner drove to the Fisher Housing Project where they had seen this vehicle on previous occasions. They located the vehicle soon thereafter, watched it for a few minutes until a man came out, got in it, and drove away. They pursued the vehicle, stopped it after it traveled about a block and a half away, and accosted the driver, Kevin Straughter. Straughter testified that on October 14, 1978, Morrison asked him to "pick up his old lady and wash his car."
Later, after a search warrant was obtained, the vehicle was searched. Part of a ladies' stocking, a red handkerchief, and a green army jacket were found. Additionally, Merlin Lindsey, an officer of the New Orleans Police Department, assigned to the latent fingerprint section, testified that he dusted the vehicle for prints and was able to retrieve from the inside of the passenger window a relatively fresh print which he identified as being from the left thumb of Hilton J. Wright.
Joel Morrison's defense was one of alibi. The contention made by his witnesses was that Morrison had loaned his car to Joseph Kent Caston[1] and was at his mother's house when the crime occurred. Barbara Bissand testified that Morrison was at his mother's house between 10:00 and 10:25 a. m. on the day of the robbery; that during that time Caston returned the car to Morrison; and that two other men were with Caston but were waiting for him in another car. Cindy Pigg corroborated much of Ms. Bissand's testimony.
Assignment of Error No. 1 by Wright
Basically, Wright contends that there was insufficient evidence to convict him for armed robbery. He argues that none of the witnesses in the drug store identified him. That contention is incorrect. Olivia Macklin, the delivery woman, tentatively identified him from a set of photographs. At trial she testified that she told the police officer:
"The man in the photograph resembles the person who held up the drug store." (Vol. II, pp. 64-65, 174).
Two other witnesses, Robert and Marie Latzenhiser, positively identified Wright as one of the men standing outside the drug store moments before the robbery. Additionally, Wright's fingerprints were found on the passenger side of Morrison's vehicle, which was identified by the Jones' ladies as the one used in the robbery.
When viewing this evidence in the light most favorable to the State, we find that a reasonable and rational trier of facts could have found beyond a reasonable doubt that Hilton Wright participated in the robbery. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2783, 61 L.Ed.2d 560 (1979).
This assignment of error is without merit.
Assignment of Error No. 2 by Wright
Wright argues that the trial court erred in denying his motion to suppress the identification made by Olivia Macklin. Eleven days after the robbery, Detective Sandy Gavin showed Ms. Macklin a photographic line-up. Although she could not positively identify anyone, she did choose a picture which she said "resembles" one of the robbers. The trial court denied this motion after finding that:
"There is really no identification; it's a tentative-type thing." (Vol. II, p. 30).
At trial, Ms. Macklin again stated she chose a photograph of someone who, "... resembles the person who held up the drug store." (Vol. II, p. 30). The defense objected to the introduction of the picture she chose and argued that, "This is no identification; the lady just says he resembles...." (Vol. II, p. 64). The court overruled the objection. Defendant contends here that the photograph admitted into evidence was not material to the case. Obviously, a witness's identification of a perpetrator of an armed robbery is material no matter how vague the identification.
Wright does not argue that the line-up procedure was impermissibly suggestive. Instead, he seems to be arguing *1096 that Ms. Macklin's vague identification unduly prejudiced him by placing him at the scene of the crime. No in-court positive identification was ever made by Ms. Macklin. The State argues that Wright's attack addresses itself to the credibility of the witness, rather than the admissibility of the evidence. We agree. The weight to be given a witness's testimony is an issue which must be determined by the finder of fact. State v. McZeal, 352 So.2d 592, 597 (La.1977). Testimony concerning partial or tentative identifications or statements that the offender "resembles" the accused are admissible into evidence. The doubtful or inconclusive nature of the identification is a matter which goes to the weight rather than the admissibility of the evidence. Compare State v. McZeal, supra., State v. Jackson, 337 So.2d 508 (La.1976). This assignment of error is without merit.
Assignment of Error No. 4 by Wright
Wright contends that the trial court erred in curtailing the cross-examination of State witness Robert Latzenhiser who had identified him as one of the men outside of Thorning's. On cross-examination, defense counsel asked Latzenhiser how long he had lived on Houma Boulevard. The State objected to the relevancy of this question and the court sustained the objection. Counsel then asked Latzenhiser where he was working at the time, and the court, sua sponte, excluded that question as being irrelevant. On appeal, counsel now argues that the witness's occupation and his length of residence in the area were:
"... valid areas of examination to allow the jury a better view of the witness and to enable the jury to evaluate his testimony and the weight to be ascribed such testimony." (Wright's brief, p. 6).
These reasons were not given to the trial judge at trial. Further, the State argues that the questions were totally irrelevant to Latzenhiser's identification of Wright. La. R.S. 15:275 vests the trial judge with sound discretion to stop the prolonged, unnecessary and irrelevant examination of a witness. Even if the trial court erred by preventing such cross-examination, Wright has shown no prejudice resulting from that ruling and is not entitled to a reversal. C.Cr.P. Art. 921.
This assignment of error lacks merit.
Assignment of Error No. 5 by Wright
Wright argues that the trial judge erred in not permitting the predicate of an objection into the record. The following colloquy is the basis for this objection:
MR. CHESTER: Your Honor, at this time, the State would offer, file, and introduce into evidence what's previously marked as State's Exhibit 1, the part of the stocking.
MR. DOLBEAR: Objection, State's 1___
THE COURT: Yes. Let's say what you're objecting to as we go along.
MR. DOLBEAR: All right, sir. We're going to object to number one. First of all, it has not been identify (sic) as been (sic) anything to do with this particular case. We had one lady say___
THE COURT: Wait. Just make the legal objection.
MR. DOLBEAR: I'm making a particular objection.
THE COURT: No, you can't make a factial (sic) objection, just give a legal bases (sic).
MR. DOLBEAR: All right. I object to the lack of relevancy, competency, and materialality (sic), based on the testimony of the witness who it was presented to for identification.
THE COURT: Okay. What about your (sic), Mr. Lemoine?
(Vol. II, pp. 186-187).
Wright contends that the stocking was not identified by Olivia Macklin at trial. However, Detective Gavin testified that the stocking had been retrieved from Morrison's vehicle. As such, it was material. The car had been seen at the scene of the crime and the stocking was in the car. Witnesses identified Wright as the perpetrator of the offense, and the victims of the crime testified that the perpetrators wore stockings over their faces.
*1097 Counsel contends that the trial judge prevented him from complying with C.Cr.P. Art. 841 which requires that the basis of an objection be made known to the judge at the earliest possible opportunity. Counsel attempted to argue the facts but the judge ordered him to state the legal objection to the evidence. Wright's right to appeal that alleged error was preserved by his objection that the stocking was irrelevant, incompetent and immaterial evidence.
No error occurred here, and this assignment of error is without merit.
Assignments of Error Nos. 1, 3, 4, 5, 7 and 8 by Morrison
Morrison contends that the trial judge erred in denying his motion to suppress identification. He argues that the line-up held January 31, 1979, was improper and resulted in a denial of his due process right to a fair trial. This contention is based on his assertion that a police officer suggested to the witnesses that an arrested subject would be in the line-up. He also argues that the identification should have been suppressed because the physical and photographic line-ups were so suggestive as to taint all subsequent identifications. Defendant argues in brief that the Latzenhisers were told that the second suspect in the robbery would be in the January 31 line-up. He cites Robert Latzenhiser's testimony at the motion to suppress for that contention. A review of that testimony only shows that Latzenhiser said, "They just said they wanted us to look at these people to see if we could pick out the second person." (Vol. II, p. 23).
When asked, "Did they tell you they had someone in custody whom they suspected to be the second person?", Latzenhiser stated, "No, not that I remember." (Id.). Defendant's contention has no factual basis. Even if it did, in State v. Stewart, 389 So.2d 1321 (La.1980), we held that a statement by police officers to a victim of a crime that they have a suspect and they would like the victim to view the photographs or attend a line-up, "... does not constitute suggestiveness, for it is generally assumed if one is called to examine a photographic or physical line-up that there is a suspect in the crowd." At the January 31 line-up, Marie Latzenhiser picked out Joel Morrison and identified him as one of the men she had seen outside Thorning's on the morning of October 14, 1978, but Robert Latzenhiser did not identify anyone in this line-up.[2]
In his fifth assignment of error, Morrison contends that the trial court committed reversible error in allowing the Assistant District Attorney to establish the presence of defendant's attorney at the pretrial line-up. However, in brief defendant's argument appears to be that the trial court erred in refusing to allow him to question Marie Latzenhiser concerning whether she or her husband had seen defense counsel at the courthouse with the defendant on the day of the second line-up. Counsel argues that the Latzenhisers knew he was defendant's attorney. This fact was not established by the record. Marie Latzenhiser testified that the only time she saw Morrison on January 31, 1979, was, "... when he came out of the door, in the line-up." (Vol. II, p. 15).
At trial, the State asked a police officer whether defense counsel was present at the line-up. Defendant objected on the grounds that it was irrelevant. The court overruled that objection and defendant argues on appeal that he was unduly prejudiced by the introduction of this evidence. The trial judge has broad discretion in determining relevancy. State v. Nero, 319 So.2d 303 (La. 1975). Here, defendant does not show any prejudice occurred from the introduction of this evidence.
In his eighth assignment of error, defendant contends that the photographic line-ups were unduly suggestive and the subsequent in-court identifications were the products of prior line-ups. Defendant does not explain how those line-ups were suggestive. His brief appears to contend that the witnesses had an idea of the perpetrator's identity all along and he argues *1098 that the police knew that Morrison's car was involved in the robbery and therefore the identification of Morrison was only a formality, no matter what evidence the police had. The witnesses in this case stated they were not told that a person had been arrested as a suspect. No suggestions were made to them when they viewed the line-up. There is no evidence here that a substantial likelihood of misidentification occurred in any of the line-ups in this case. A line-up is unduly suggestive if the identification procedure displays the defendant so that the witness's attention is focused directly on him. State v. Robinson, 386 So.2d 1374, 1377 (La.1980). Such was not the case in the line-ups involved here.
In assignments of error nos. 3 and 4, Morrison contends that the trial judge erred in allowing the Latzenhisers to make in-court identifications of him. He contends that Robert Latzenhiser failed to identify him in several physical and photographic line-ups and that Marie Latzenhiser had not identified him at two prior photographic line-ups and only at a physical line-up. When the witnesses were asked to identify the defendants in court, no objection was made by defense counsel. Absent a contemporaneous objection, that error is not reviewable on appeal. C.Cr.P. Art. 841.
It is established in the jurisprudence of this State that a witness's failure to identify an accused at a pretrial line-up does not render a later in-court identification inadmissible, and that failure to identify a suspect at a pretrial line-up is a matter which addresses itself to the weight of a witness's testimony rather than its admissibility. State v. McZeal, supra., State v. Batiste, 318 So.2d 27 (La.1975).
These assignments of error lack merit.
Assignment of Error No. 2 by Morrison
Here, Morrison contends that the trial court committed reversible error in allowing "non-identification" of Hilton Wright to be introduced into evidence. This argument is the same as Wright's assignment of error No. 2 which earlier was determined to be without merit. Furthermore, Morrison makes no showing of how such identification prejudiced him, and this assignment of error lacks merit.
Assignment of Error No. 6 by Morrison
Morrison maintains that the trial court erred in allowing the district attorney to comment at trial upon his failure to pick his automobile up from the automobile pound, thus creating an inference that he was guilty. He also contends that his constitutional rights not to testify as well as his privilege against self-incrimination were violated thereby. The record (Vol. II, p. 200) reveals that the following colloquy took place during cross-examination of Ms. Katherine Smith, Joel Morrison's sister and a defense witness:
Q ... you knew it (the car) was in the pound, right?
A Yes.
Q Did you discuss with him where the car was, and maybe he should go try to get it out of the pound?
A No, I did not.
Q Did you find it unusual that he had a 1973 Buick that was in the police auto pound and he wouldn't go recover it?
A Well, no I didn't.
MR. LEMOINE: I think he's asking for a conclusion.
THE COURT: Yes.
Defense counsel's objection to this testimony was maintained by the court but was based on grounds dissimilar to those urged here. It is settled that a new basis for an objection cannot be substituted on appeal, and that only the grounds made known to the trial judge at the time of his ruling may be relied on by this court. State v. Baylis, 388 So.2d 713 (La.1980); State v. Woodard, 387 So.2d 1066 (La.1980).
Clearly, Morrison's fifth amendment rights against self-incrimination were not violated here. He was not forced to testify or give evidence against himself. The privilege against self-incrimination protects the accused only from compulsion to testify against himself. State v. Wilson, 329 So.2d 680 (La.1976).
This assignment of error lacks merit.
*1099 For the above and foregoing reasons the convictions and sentences herein are affirmed.
AFFIRMED.
NOTES
[*] Judges Melvin A. Shortess, Burrell J. Carter, and Felix H. Savoie, Jr., of the First Circuit Court of Appeal participated in this decision as associate justices ad hoc, joined by Chief Justice Dixon, and Associate Justices Calogero, Marcus, and Dennis.
[1] Caston died prior to Morrison's trial. (Vol. II, p. 219).
[2] This fact should in itself refute the allegation that any suggestiveness took place.