903 So.2d 605 (2005)
STATE of Louisiana, Appellee
v.
Michael T. HUDNALL, Appellant.
No. 39,723-KA.
Court of Appeal of Louisiana, Second Circuit.
May 11, 2005.
*606 Jacque D. Derr, Winnfield, James E. Beal, Jonesboro, Louisiana Appellate Project, for Appellant.
Terry R. Reeves, District Attorney, James E. Lewis, Assistant District Attorney, for Appellee.
Before BROWN, WILLIAMS, and CARAWAY, JJ.
BROWN, C.J.
Defendant, Michael Todd Hudnall, pled guilty to a reduced charge of attempted possession of methamphetamine with intent to distribute, reserving his right under State v. Crosby, 338 So.2d 584 (La. 1976), to appeal the trial court's denial of his pretrial motion to suppress evidence. He was sentenced to eight years at hard labor and ordered to pay a fine of $2,500 together with court costs. Finding no error, we affirm defendant's conviction and sentence.

Facts
At the pretrial hearing on defendant's motion to suppress evidence, the state presented the testimony of Deputy Herman J. Grantadams, Jr., of the Winn Parish Sheriff's Office. Deputy Grantadams related the following. At 1:40 a.m. on April 18, 2004, Deputy Grantadams and three other uniformed officers arrived at defendant's residence on L. Melton Road in Winn Parish looking for a fugitive named Henry "Ben" Stinson. Defendant's wife answered the door and then defendant came *607 to the door. When the deputy indicated that Stinson's car was outside, defendant said he was probably in the residence and gave permission for the deputy to come in and search. Initially, the deputy did not find Stinson and together with defendant, looked outside for Stinson. Unsuccessful in their search, they returned to the residence. The deputy testified as follows regarding what transpired next:
Q: And at that time did you notice anything in Mr. Hudnall's hand?
A: Yes, sir, I did. I noticed a small red and white object that he was clenching in his hand.
Q: Did you say anything to him about it?
A: Yes, sir. I asked him  I asked him what was in his hand, and asked him if I could see it. He handed it to me. I asked him what was in the can and he told me I would know when I'd open it. And I opened the can and observed several small bags. Mr. Hudnall advised that it was  I asked him what was in these bags and he said, ice. And 
Q: When you approached Mr. Hudnall about the can in his hand, did you demand to see the can or did you ask him 
A: I just asked him. I just asked if I could see in the can.
Q: And did you have to take it away from him or did he hand it to you?
A: No, he handed it to me.
Q: He did?
A: Yes, sir.
Deputy Grantadams furthered testified as follows:
Q: Why were you interested in the can?
A: Well, at first I didn't know what he really had in his hand, I didn't know if it was a weapon or what he had in his hand. And when he opened it, you know, I suspected there was possible drugs or something inside of the can.
Q: Have you run into drugs before in cans like that?
A: Yes, sir, I sure have.
Deputy Grantadams stated that defendant was not placed under arrest at that time, nor was he given any Miranda warnings. The metal Altoids mint box was secured and the search for Stinson continued. Stinson was found hiding in the residence. The contents of the tin box were sent to the crime lab and determined to be methamphetamine.
At the motion to suppress hearing, defendant testified that earlier he had told Stinson that "the door would be open and he was more than welcome" and that Stinson came after "we had already went to bed." He further stated:
A: I had a small metal can about two and a half inches long in my hand.
Q: All right. What happened then?
A: Mr. Grantadams motioned with the butt of his flashlight, like taps on the back of my hand, and I opened my hand and he took the can and tossed it on the dresser and motioned to leave the room.
Q: All right. And then what did you do?
A: We went back down the hall, we proceeded outside.
...
A: We walked back in the living room, and went  may have went back into the kitchen again, maybe even on the back porch. And I turned to come back in the kitchen and Mr. Grantadams had went down the hall and I went a little behind him. As I entered the bedroom he had the can that he tossed on the dresser in his hand.
Q: Okay.
A: And as I entered the bedroom he had it in his hand at that time, in the *608 process of opening it. And he said, what is it? And I said, it's probably what you think it is.
Q: Did he ask you for permission to open the can?
A: No, sir, he did not.
On rebuttal, Deputy Grantadams denied taking the box without permission and denied tossing the tin onto the dresser.
After hearing arguments, the trial court found that defendant gave his consent to the deputy when Officer Grantadams asked defendant what he had in his hand. The court further found that defendant's credibility was questionable and unreliable.

Discussion
The defense simply argues that the trial court erred in believing the deputy's version of events. The defense argues that the deputy took the suspicious can from defendant and after analysis, obtained a warrant for defendant's arrest. Defendant argued that this was a warrantless search without probable cause.
To justify a warrantless search, the state must show that the search falls within one of the narrowly drawn exceptions to the warrant requirement. State v. Williams, 38,379 (La.App. 2d Cir.11/25/03), 858 So.2d 878, writ denied, 03-3535 (La.03/12/04), 869 So.2d 807, on subsequent appeal, 39,660 (La.App. 2d Cir.04/06/05), 900 So.2d 259. One of the specifically established exceptions to the warrant requirement is a search conducted pursuant to consent. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Wilson, 467 So.2d 503 (La.1985), cert. denied, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985); State v. Williams, 98-1006 (La.App. 5th Cir.03/30/99), 735 So.2d 62, writ denied, 99-1077 (La.09/24/99), 747 So.2d 1118. Oral consent is valid. State v. Crews, 28,153 (La.App. 2d Cir.05/08/96), 674 So.2d 1082.
The burden is on the state to prove that the consent was given freely and voluntarily. State v. Crews, supra. Voluntariness is a question of fact to be determined by the trial court under the facts and circumstances of each case. This determination is to be given great weight on appeal because of the trial court's opportunity to observe witnesses and assess credibility. State v. Jennings, 39,543 (La.App. 2d Cir.03/02/05), 895 So.2d 767; State v. Pagget, 28,843 (La.App. 2d Cir.12/11/96), 684 So.2d 1072.
A review of the record in the instant case clearly supports the trial court's conclusion that the state met its burden of proving that defendant gave his consent to the deputy's warrantless search of the Altoids tin containing the individual bags of methamphetamine. The state's proof consisted of the testimony of Deputy Grantadams, which specifically contradicted defendant's testimony that he did not consent to a search of the small container. The trial court's determination of the voluntariness of defendant's consent is to be given great weight on appeal in light of the trial court's opportunity to observe the witnesses and assess credibility. State v. Edwards, 434 So.2d 395 (La.1983); State v. Paggett, supra. Since the search of the tin container was conducted by the deputy after he obtained consent from the defendant, it was permissible under the state and federal constitutions and is therefore valid. The trial court committed no error in denying defendant's motion to suppress. This assignment of error is without merit.

Conclusion
For the reasons set forth above, defendant's conviction and sentence are affirmed.