PEATROSS, J.
 

 | defendant, Travis Cooper, pled guilty to one count of armed robbery, in violation of La. R.S. 14:64, and was sentenced to 11 years’ imprisonment at hard labor. Defendant now appeals. For the reasons stated herein, the conviction and sentence of Defendant are affirmed.
 

 FACTS
 

 On August 3, 2004, Corporal Raymond Bordelon of the Shreveport Police Department received a call from dispatch informing him that an armed robbery had taken place at the Cash Depot store in the 3300 block of Youree Drive. Officer Bordelon and his partner responded to the call; but, when they arrived at the store, the perpetrators had already left. The victim, an employee of the store named Sonja Hop-paugh, told Officer Bordelon that a tall black male, wearing a green sweatshirt and a cloth over his face, had pointed a sawed-off shotgun at her and demanded money. The perpetrators stole several thousand dollars in cash and checks from Ms. Hoppaugh, as well as her purse and her vehicle.
 
 [1]
 

 About an hour after the first call was made, Officer Jason Person of the Shreveport Police Department received a second call from dispatch. A resident had called the police, noting that a vehicle had pulled up behind a house on a residential street and people were getting out of the vehicle and running away. Officer Person was one of the first responding officers at the location of the vehicle. Officer Person walked around the vehicle, noting that the doors were open, paperwork was strewn on the ground and a thin | ^rubber glove was lying on the ground near the vehicle. After several other officers arrived at the scene, Officer Person began to canvass the surrounding area.
 

 
 *1176
 
 About two blocks away from the abandoned vehicle, Officer Person noticed Defendant and several other suspects getting into a small car. Officer Person stated later that his attention was drawn to the suspects because of “the size of them getting into this little car.” Officer Person added that one of the men turned around, made eye contact with him and made a worried facial expression. Officer Person later testified that this combination of events led him to believe that the men in the small car were the suspects.
 

 As the suspects were driving away, Officer Person saw that the vehicle had a taillight out, so he activated his overhead lights to stop the vehicle. The suspects continued to drive approximately two blocks and then pulled over. Officer Person first spoke with the driver, who began “rambling” in response to his questions. The Officer then asked the driver and the other suspects to exit the vehicle, later testifying that “they were piled up in that car and I couldn’t see what was going on inside the car[.]” The suspects each told Officer Person that they had just come from a house, but none gave consistent answers when questioned about the color of the house and the interior furnishings. Officer Person later testified that, because of the suspects’ nervous behavior, inconsistencies in their stories and bulges in their pockets, he began conducting pat-down searches to make sure that none of the suspects were carrying weapons.
 

 |sDuring his pat-down search of Defendant, Officer Person felt a “large bulge” in Defendant’s pocket, which Defendant told him was $40 in cash. Officer Person then asked Defendant if he could remove the object from Defendant’s pocket and Defendant gave his verbal consent. Officer Person then removed a large group of bills and a green plastic glove from Defendant’s pocket.
 
 [2]
 

 Meanwhile, Corporal Bordelon transported Ms. Hoppaugh to the scene where Officers Person and Crisp were detaining the suspects, who had already been handcuffed by Officer Person. Ms. Hoppaugh stayed in the car while the officers instructed the suspects to step out of the car. When the first suspect stepped out of the vehicle, Ms. Hoppaugh stated to Officer Bordelon that she was not sure, but she thought he was the man who had the shotgun. Ms. Hoppaugh then recognized the suspect’s pants and stated, “that’s the pants that they were wearing, that he was wearing.” After Ms. Hoppaugh made the tentative identification, Officer Michael McConnell took Defendant and the other suspects to the police station.
 

 On September 28, 2004, the State filed a bill of information charging Defendant with two counts of armed robbery, in violation of La. R.S. 14:64. The bill’s first count alleged that Defendant, armed with a sawed-off shotgun, had robbed Nicky’s Mexican Restaurant on June 20, 2004. The second count alleged that Defendant had robbed Cash Depot, while armed with a shotgun, on August 3, 2004.
 
 [3]
 
 Defendant filed two motions to |4suppress, both of which challenged the identification process employed by the officers. A hearing was held on August 1, 2007, after which Defendant filed a supplemental motion to suppress challenging the stop, detention and the identification. On September 18, 2007, the trial court issued a ruling denying Defendant’s motions to suppress.
 

 
 *1177
 
 Trial was set for November 5, 2007; and, on November 6, 2007, Defendant entered a plea of guilty as to the second count of armed robbery and the State dismissed the first count. Defendant reserved his right to pursue appellate review of the trial court’s denial of the motions to suppress by entering the guilty plea pursuant to
 
 State v. Crosby,
 
 338 So.2d 584 (La.1976). Defendant received an agreed upon sentence of 11 years at hard labor, without the benefit of parole, probation or suspension of sentence. This appeal ensued.
 

 DISCUSSION
 

 Assignment of Error Number One (verbatim):
 
 The trial court erred in denying the Defendant’s Motions to Suppress.
 

 First, Defendant argues that his lengthened detention by the officers pursuant to a traffic stop was improper and that any evidence obtained should have been suppressed. Second, Defendant contends that the pat-down search was unreasonable because there was no reasonable basis for Officer Person’s belief that the suspects were armed. Additionally, Defendant asserts that Officer Person’s search of his pocket was not supported by the “plain feel” exception to the warrant requirement. Finally, Defendant argues that the identification process of Defendant was improperly suggestive and should have been suppressed.
 

 IsThe State counters that the traffic stop was lawful under
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), since Officer Person had observed a traffic violation,
 
 ie.,
 
 the vehicle’s taillight was out. The State argues that jurisprudence does not require that an officer have reasonable suspicion of criminal activity prior to asking questions during a traffic stop and that, since Officer Person articulated facts which justified a belief that he was in danger, his frisk of the suspects’ clothing was lawful. The State asserts that the time limitation for traffic stops contained in La. C. Cr. P. art. 215.1 does not apply since Officer Person had developed additional reasonable suspicion of criminal activity subsequent to the stop.
 

 In reviewing the correctness of the trial court’s pretrial ruling on a motion to suppress, the appellate court may review the entire record, including testimony at trial.
 
 State v. Young,
 
 39,546 (La.App. 2d Cir.3/2/05), 895 So.2d 753, citing
 
 State v. Sherman,
 
 04-1019 (La.10/29/04), 886 So.2d 1116;
 
 State v. Green,
 
 94-0887 (La.5/22/95), 655 So.2d 272;
 
 State v. Brooks,
 
 92-3331 (La.1/17/95), 648 So.2d 366;
 
 State v. Martin,
 
 595 So.2d 592 (La.1992). Great weight is placed upon the trial court’s ruling on a motion to suppress with regard to the findings of fact because it had the opportunity to observe the witnesses and weigh the credibility of their testimony.
 
 State v. Crews,
 
 28,153 (La.App. 2d Cir.5/8/96), 674 So.2d 1082, citing
 
 State v. Jackson,
 
 26,138 (La.App. 2d Cir.8/17/94), 641 So.2d 1081. This court reviews the trial court’s ruling on a motion to suppress under the manifest error standard in regard to factual determinations, while reviewing its findings of law
 
 de novo. State v. Hemphill,
 
 41,526 (La.App. 2d Cir.11/17/06), 942 So.2d 1263,
 
 writ denied,
 
 06-2976 (La.3/9/07), 949 So.2d 441, citing
 
 State ex rel. Thibodeaux v. State,
 
 01-2501 (La.3/8/02), 811 So.2d 875;
 
 State v. Jones,
 
 36,553 (La.App. 2d Cir.1/29/03), 840 So.2d 7,
 
 writ denied,
 
 03-0956 (La.10/3/03), 855 So.2d 309.
 

 In general, a plea of guilty waives non-jurisdictional defects in the proceedings prior to the plea. Subject to the trial court’s discretion, however, a defendant may enter a plea of guilty while simultaneously reserving identified pre-plea errors for appellate review.
 
 State v. Crosby, supra.
 
 The function of a
 
 Crosby
 
 plea is to permit a fair and efficient review
 
 *1178
 
 of a central issue when the pre-plea ruling on that issue, if erroneous, would mandate reversal of any resulting conviction.
 
 Id.
 
 A motion to suppress is typical of a pre-plea ruling subject to a
 
 Crosby
 
 reservation.
 
 Id.; State v. Thomas,
 
 28,790 (La.App. 2d Cir.10/30/96), 683 So.2d 1272.
 

 Search and Seizure
 

 The right of every person to be secure in his person, house, papers and effects against unreasonable searches and seizures is guaranteed by the Fourth Amendment to the United States Constitution and Article I, § 5, of the 1974 Louisiana Constitution. It is well settled that a search and seizure conducted without a warrant issued on probable cause is
 
 per se
 
 unreasonable unless the warrantless search and seizure can be justified by one of the narrowly drawn exceptions to the warrant requirement.
 
 State v. Thompson,
 
 02-0333 (La.4/9/03), 842 So.2d 330;
 
 State v. Tatum,
 
 466 So.2d 29 (La.1985);
 
 State v. Ledford,
 
 40,318 (La.App. 2d Cir.10/28/05), 914 So.2d 1168.
 

 The right of law enforcement officers to temporarily detain and interrogate persons reasonably suspected of criminal activity is well established. La. C. Cr. P. art. 215.1;
 
 Terry v. Ohio, supra; State v. Fauria,
 
 393 So.2d 688 (La.1981);
 
 State v. Taylor,
 
 363 So.2d 699 (La.1978). The decision to make an investigatory stop must be based on reasonable cause to believe that the suspect has been, is or is about to be, engaged in criminal activity.
 
 State v. Washington,
 
 621 So.2d 114 (La.App. 2d Cir.1993),
 
 writ denied,
 
 626 So.2d 1177 (La.1993);
 
 State v. Patterson,
 
 588 So.2d 392 (La.App. 4th Cir.1991);
 
 State v. Thibodeaux,
 
 531 So.2d 284 (La.App. 3d Cir.1987). Reasonable cause for an investigatory stop is something less than probable cause, but the officer must have “artic-ulable knowledge” of particular facts which, in conjunction with reasonable inferences drawn therefrom, provide reasonable grounds to suspect the detainee of criminal activity.
 
 State v. Flowers,
 
 441 So.2d 707 (La.1983),
 
 cert. denied,
 
 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984);
 
 State v. Knowles,
 
 40,324 (La.App. 2d Cir.12/30/05), 917 So.2d 1262;
 
 State v. Washington, supra; State v. Thibodeaux, supra; State v. Rodriguez,
 
 396 So.2d 1312 (La.1981).
 

 Public safety requires some flexibility for police to investigate and prevent crime.
 
 State v. Wesley,
 
 28,012 (La.App. 2d Cir.4/3/96), 671 So.2d 1257. Police officers are justified in ordering passengers out of cars for the purpose of officer safety. It may be a slight inconvenience, but it is not a serious intrusion upon privacy interests.
 
 State v. Landry,
 
 588 So.2d 345 (La.1991). To assess the validity of an investigatory stop, the critical inquiry-focuses on the officer’s knowledge at the time of the stop.
 
 State v. Williams,
 
 421 So.2d 874 (La.1982);
 
 State v. Wesley, supra.
 
 Flight, nervousness or a startled look may be a factor under La. C. Cr. P. art. 215.1 in finding reasonable cause to stop.
 
 State v. Furlow,
 
 34,339 (La.App. 2d Cir.2/28/01), 780 So.2d 602,
 
 writ denied,
 
 01-0889 (La.3/15/02), 811 So.2d 895.
 

 When an officer stops a person whom he reasonably believes to be involved in criminal activity, he is justified in conducting a frisk of that individual’s outer clothing for dangerous weapons, if the officer reasonably suspects that he is in danger. La. C. Cr. P. art. 215;
 
 State v. Furlow, supra; Terry v. Ohio, supra.
 
 Such a search must not extend beyond the means necessary to ascertain whether the individual is armed.
 
 Terry v. Ohio, supra.
 
 An officer does not need to show that the detained individual was probably armed and dangerous; rather, an officer need
 
 *1179
 
 only demonstrate a substantial possibility of danger.
 
 Id.
 

 One of the specifically established exceptions to the warrant requirement is a search conducted pursuant to consent.
 
 Schneckloth v. Bustamonte,
 
 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973);
 
 State v. Strange,
 
 04-0273 (La.5/14/04), 876 So.2d 39;
 
 State v. Wilson,
 
 467 So.2d 503 (La.1985),
 
 cert. denied,
 
 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985);
 
 State v. Hudnall,
 
 39,723 (La.App. 2d Cir.5/11/05), 903 So.2d 605. Oral consent is valid.
 
 State v. Hudnall, supra; State v. Crews, supra.
 

 |flThe burden is on the state to prove that the consent was given freely and voluntarily.
 
 State v. Crews, supra.
 
 Voluntariness is a question of fact to be determined by the trial court under the facts and circumstances of each case. This determination is to be given great weight on appeal because of the trial court’s opportunity to observe witnesses and assess credibility.
 
 State v. Hudnall, supra; State v. Jennings,
 
 39,543 (La.App. 2d Cir.3/2/05), 895 So.2d 767;
 
 State v. Baggett,
 
 28,843 (La.App. 2d Cir.12/11/96), 684 So.2d 1072.
 

 Probable cause for an arrest exists when the facts and circumstances known to the officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in the belief that the person to be arrested has committed a crime.
 
 State v. Wilson, supra; State v. White,
 
 543 So.2d 124 (La.App. 2d Cir.1989). The measure of probable cause to arrest is not that a police officer have proof sufficient to convict.
 
 State v. Scott,
 
 389 So.2d 1285 (La.1980). In
 
 State v. Johnson,
 
 422 So.2d 1125 (La.1982), the Louisiana Supreme Court found that probable cause is determined by the setting in which the arrest took place, together with the facts and circumstances known to the arresting officer from which he might draw conclusions warranted by his training and experience. Considering the circumstances, it must be more probable than not that the defendant’s activity consisted of criminal behavior.
 
 State v. Fauria, supra; State v. Massey,
 
 535 So.2d 1135 (La.App. 2d Cir.1988).
 

 In the case
 
 sub judice,
 
 Officer Person observed that the suspects violated a traffic regulation,
 
 ie.,
 
 the vehicle’s broken taillight; thus, his |ininitial stop of the suspects was proper.
 
 State v. Stoutes,
 
 43,181 (La.App. 2d Cir.4/2/08), 980 So.2d 230. Officer Person noted that the suspects fit the general description of the perpetrators and that the suspects were in the vicinity of the vehicle which had been abandoned by the offenders. He also saw that the number and size of the suspects was incongruous with the small car that they entered, that one of the suspects looked startled upon seeing a police officer and that all of the suspects acted nervous after the stop. Finally, Officer Person observed that the driver gave rambling answers in response to his questions and that none of the suspects could supply consistent answers as to their previous whereabouts. Officer Person’s belief that the suspects may have been involved with the armed robbery earlier that day was, therefore, a reasonable inference which was based on particularized facts.
 

 Given the violent nature of the offense and the fact that the suspects outnumbered Officer Person four to one, he was reasonable in suspecting that he was in danger and in conducting a frisk of the suspects’ clothing for weapons. Since Officer Person asked Defendant if he could reach into Defendant’s pocket to remove the bulging item, and Defendant consented, Officer Person’s search of Defendant’s pocket was proper under the consent exception to the warrant requirement.
 

 
 *1180
 
 The trial court in this case had the opportunity to assess the credibility of Officer Person’s testimony in its factual determination of whether Defendant’s consent had been given freely and voluntarily. The record does not reflect any indication that Defendant’s consent was not voluntarily [^given. Thus, we find that the trial court did not err in failing to suppress this evidence.
 

 Identification
 

 In a lineup identification of a suspect, the lineup is deemed unduly suggestive if the defendant is displayed in such a way that the attention of the witness is unduly focused on the defendant.
 
 State v. Davis,
 
 407 So.2d 702 (La.1981). The suggestiveness of a lineup procedure, however, does not automatically null the identification by the witness.
 
 Id.
 
 The possibility of misidentification is what renders a suggestive lineup violative of due process, not its suggestiveness
 
 per se. Id.
 

 The identification is admissible, regardless of the suggestiveness of the lineup, if the totality of the circumstances demonstrates conclusively that the identification was reliable.
 
 Id.
 
 The reliability of an identification should be analyzed by the reviewing court according to the factors set forth in
 
 Manson v. Brathwaite,
 
 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). The
 
 Manson
 
 factors include: (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness’ degree of attention; (3) the accuracy of the witness’ prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation.
 
 See State v. Brealy,
 
 00-2758 (La.App. 4th Cir.11/7/01), 800 So.2d 1116.
 

 When a defendant’s identity is disputed, the State carries the burden of negating reasonable probability of misidenti-fication in order to meet the test set forth in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979).
 
 State v. Hughes,
 
 05-0992 (La.11/29/06), 943 So.2d 1047;
 
 State v. Lewis,
 
 43,402 (La.App. 2d Cir.8/13/08), 990 So.2d 109. A tentative identification is not necessarily unreliable. For example, in
 
 State v. Wright,
 
 410 So.2d 1092 (La.1982), the witness could not positively identify the defendant, either at trial or in the photographic lineup. The
 
 Wright
 
 court held that the degree of identification affects the weight of the evidence.
 
 Id.
 
 Testimony which pertains to partial or tentative identifications or statements that the offender “resembles” the accused are admissible into evidence.
 
 Id.
 

 When Defendant was presented to Ms. Hoppaugh, he was in handcuffs and Ms. Hoppaugh identified the first suspect to step out of the vehicle. Officer Bordelon’s testimony in the record suggests that the suspects were presented to Ms. Hoppaugh one at a time, which would have focused Ms. Hoppaugh’s attention on the first suspect to step out of the car. The totality of the circumstances, however, indicates that the identification was admissible. In this case, the assailant wore a cloth over his face, so Ms. Hoppaugh would not have been able to see his face. Ms. Hoppaugh was, however, able to describe Defendant’s height, build and clothing to the police, in addition to recognizing the pants Defendant was wearing. The record reflects that not much time had elapsed between the robbery and the detention of the suspects, which also decreases the likelihood of misidentification. Finally, the fact that Ms. Hoppaugh made only a tentative identification goes to the weight of the evidence, rather than admissibility. Accordingly, we find no error in the trial court’s ruling.
 

 
 *1181
 
 This assignment of error is without merit.
 

 \r,CONCLUSION
 

 For the foregoing reasons, the conviction and sentence of Defendant, Travis L. Cooper, are affirmed.
 

 AFFIRMED.
 

 [1]
 

 . At his guilty plea hearing, Defendant admitted to maintaining a lookout while his brother, John F. Cooper, went into the business through the ceiling and robbed Ms. Hop-paugh at gunpoint.
 

 [2]
 

 . The stolen checks were later recovered at 6108 Lexington. The abandoned vehicle was found at the 6100 block of Lexington.
 

 [3]
 

 . On October 6, 2004, the State filed an amended bill of information changing the name of the victim in count two from Cash Depot to Sonya Hoppaugh.