Judgment rendered December 17, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,625-KA
No. 56,627-KA
(Consolidated Cases)

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                    Appellee

versus

RICHIE A. NORRIS                      Appellant

* * * * *

Appealed from the
Thirty-Seventh Judicial District Court for the
Parish of Caldwell, Louisiana
Trial Court No. 105,037 and 105,018

Honorable Ashley P. Thomas, Judge

* * * * *

LOUISIANA APPEALS AND WRIT          Counsel for Appellant
SERVICE
By: Annette Fuller Roach

BRIAN E. FRAZIER                    Counsel for Appellee
District Attorney

CLIFFORD ROYCE STRIDER, III
Assistant District Attorney

* * * * *

Before PITMAN, ROBINSON, and MARCOTTE, JJ.

**ROBINSON, J.**

Richie A. Norris ("Norris") was indicted on May 16, 2024, in trial docket number 105,037, with second degree murder in violation of La. R.S. 14:30.1, in connection with a homicide that took place on February 11, 2024. An amended bill of indictment was filed under the same docket number on April 15, 2025, to reflect the inclusion of the charge of possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1 in relation to a firearm seized the same day of the homicide. Norris waived any deficiencies to the late filing of the charge. Norris was also charged by bill of information in trial docket number 105,089 with possession of a firearm by a convicted felon in relation to a firearm seized immediately following his arrest on February 16, 2024. On June 17, 2024, Norris was charged by bill of information in trial docket number 105,018 with battery on a correctional facility employee in violation of La. R.S. 14:34.5 as a result of an incident on May 3, 2024. He was charged in trial docket number 105,580 with obscenity in violation of La. R.S. 14:106 as a result of an incident on March 12, 2025.

Norris was authorized to represent himself on the charges of second degree murder (docket number 105,037), felon in possession of a firearm (docket number 105,089), and battery of a correctional officer (docket number 105,018), following a hearing on September 17, 2024, conducted in accordance with *Faretta v. California*, 422 U. S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). Norris had indicated that he would represent himself pertaining to the obscenity charge (docket number 105,580), so the trial court conducted an additional *Faretta* hearing on April 15, 2025, upon presentation to the court of a proposed plea agreement.

Norris entered into a plea agreement on April 15, 2025, following the trial court's denial of his motion to suppress evidence obtained as a result of his arrest. He pled guilty to the amended charge of manslaughter in violation of La. R.S. 14:31, the new charge of possession of a firearm by a convicted felon (for the gun seized on February 11, 2024), obscenity, and battery on a correctional officer. The State agreed to *nolle pros* the previous charge of possession of a firearm by a convicted felon (for the gun obtained following the arrest on February 16, 2024), and that it would not file a habitual offender bill. Norris received an agreed upon sentence of 40 years at hard labor for the manslaughter charge; 15 years at hard labor without benefit of probation, parole, or suspension of sentence plus a $1,000 fine for the possession of a firearm by a convicted felon charge; 2 ½ years at hard labor for the obscenity charge; and 2 ½ years at hard labor without benefit of probation, parole, or suspension of sentence plus a fine of $500 for the battery of a correctional officer charge. All of these sentences were to be served consecutively with credit for time served. The trial court then waived the fines based on its determination of Norris's inability to pay.

Norris sought to preserve his right to appeal the trial court's rulings on the motions to suppress under *State v. Crosby*, 338 So. 2d 584 (La. 1976). An appeal was filed for trial docket number 105,089 for the charge of felon in possession of a firearm related to the evidence obtained on February 16, 2024, but this Court dismissed the appeal for lack of jurisdiction since there was no final, appealable judgment to review, because Norris had not been convicted or sentenced. No appeal was filed in trial docket number 105,580 (obscenity). The appeals for trial docket numbers 105,037 (manslaughter and felon in possession of firearm) and 105,018 (battery of a correctional

2

officer) were consolidated for briefing purposes, as they both concerned the same motion to suppress and supplemental motion to suppress.

For the reasons set forth below, we AFFIRM the trial court's denial of Norris's motions to suppress and uphold Norris's plea agreement and sentences.

## FACTS AND PROCEDURAL BACKGROUND

The facts leading up to Norris's conviction were set forth in the guilty plea colloquy, as follows:

Your honor, in relationship to the Battery on a Correctional Facility Employee, the defendant, on May 5th, 2024, was incarcerated at Caldwell Correctional Facility. When at, during that time he, uh, struck Sergeant Brandon with a closed fist in the doorway of lock down cell number 2. Sergeant Brandon is an employee of the, of the correctional facility. That occurred in Caldwell Parish. In relationship to the Obscenity, while the defendant was continued to be incarcerated at the Caldwell Correctional Center on March 12th, 2025, at approximately 2 o'clock in the morning, a female employee, who was a guard, was walking down the back aisle located in one of the dorms when she noticed the defendant, Richie Norris, in a bed that was not assigned to him. Before she could tell him to get back into his own bunk, he pulled down his sheet that was covered, that was covering up, and exposed his genitals to her. Again, these events occurred in Caldwell Parish. In relationship to the Manslaughter. And the State would like it to be noted that the Manslaughter is a negotiated plea. The original Indictment was for Second Degree Murder. But this is a plea bargain where the defendant, where the State agreed to the, to the charge of Manslaughter. That on February 12th (sic) 2024, in Caldwell Parish, at approximately 5 o'clock in the morning, the defendant went to 124 Madison Lane in Kelly, Louisiana, which is located in Caldwell Parish. At that location was his, uh, the, the mother of his child, Kristen Sharbono, otherwise known as KeeKee. She had been staying there with Devon Carl Hines, the victim in this matter. Apparently, she and Mr. Hines were having some kind of difficulty. Ms. Sharbono text the defendant through his friend, Courtney Lefebvre, uh, asking them to come pick them up. Indicated that she had been having, been fighting and having trouble with Mr. Hines. The defendant was driven to that location by Mr. Lefebvre in his truck. Upon coming to the location, the defendant walked into the house-he took a gun out of the truck, walked into the house, fired several shots, hitting the defendant, uh, the victim, Mr. Hines, in the left arm with one shot

3

and the other in his head, which caused his death. After that, the defendant got into Mr. Lefebvre's truck, they left the area, and on Highway 165 between Highway 843 and Madison Lane, the defendant threw the gun out of the truck. Upon investigation and talking to Mr. Lefebvre about the gun being thrown out the truck, they were able to recover a Taurus 9mm handgun, which was the murder weapon. That Taurus 9mm handgun, uh, is the, uh, is the gun that is the subject of Count 2, Convicted Felon in Possession of a Firearm. Defendant having previously been convicted in a felony, several felonies, as a matter, within the last ten (10) years. All of those events occurred in Caldwell Parish.

Norris agreed with and admitted to the facts presented by the State, and entered into the above-referenced plea agreement, subject to his right to appeal the trial court's rulings on the motion to suppress and supplemental motion to suppress as to the charges of manslaughter, possession of a firearm by convicted felon (2/11/24 firearm), and battery on a correctional officer.

Norris was originally represented by appointed counsel but requested to represent himself following a disagreement with counsel's decision not to adopt one of the several pro se motions he had filed. The trial court held *Faretta* hearings on both September 17, 2024, and April 15, 2025, in which Norris was advised at length of the disadvantages of representing himself, especially considering he was facing a life sentence. Norris was authorized by the trial court to represent himself in the proceedings and was appointed stand-by counsel. Norris filed numerous pretrial motions, mostly consisting of motions to suppress and motions to dismiss, many of which were repetitive in their allegations and requests.

A hearing was held on November 26, 2024, concerning all of Norris's pro se motions filed up until that date, including all motions to suppress. The court clarified that Norris's complaints in the various motions to suppress were that the arrest warrant was improperly issued because it was

4

not truthful and lacked probable cause, and the search of the vehicle following his arrest was unlawful. Norris confirmed that he was challenging the statements of the two purported witnesses on which the affidavit of arrest was based, Kristen Sharbono ("Sharbono") and Courtney Lefebvre ("Lefebvre"), and the lack of probable cause for the issuance of the warrant. He sought the suppression of any evidence gathered against him since his improper arrest was based on the faulty affidavit. The following discussion took place:

> THE COURT: So, your Motion to Suppress is then, as I hear it, and correct me if I'm wrong, based on the fact that you believe that they, uh, produced false statements to the police that were used in the Affidavit of Arrest. And, as a result of such, you wish to suppress any evidence that was collected subsequent to your arrest? Is that what you're saying?
>
> MR. NORRIS: Yes sir. I would like –
>
> THE COURT: Am I – don't, don't, I'm not putting words in your mouth, I'm asking, is that what you're trying to tell me? It sounded like what you said.
>
> MR. NORRIS: I'm trying to suppress their statements and any evidence that was gathered after my arrest while I was at Caldwell Correctional Center, like, on monitored phone calls and video chats. I would like to for all of that to be suppressed.
>
> MR. STRIDER: I don't, I don't understand, Your Honor.
>
> THE COURT: I don't know. That, that, I don't, I don't, that's not to be unexpected, of course. All right. So. –
>
> MR. NORRIS: I'm, I'm suppressing it, Your Honor. The evidence that was gathered after my arrest behind, behind these false statements. This was the uncorroborated hearsay that was used in this affidavit for my arrest.
>
> MR. STRIDER: I don't believe that's the issue that the defendant is raising. I believe what he's saying is, and he can correct me if I'm wrong, I believe he's saying that the Arrest Warrant was based on untruthful statements by these two (2) witnesses. And if, if that's the case, that's not, would not be at issue today. The issue today would be, did the police officer present to the evidence, to the Court evidence that he thought

showed that there was probable cause to arrest? And if he believed those statements were correct and truthful, and if he had any reason not to believe them. If he believed them when he submitted to the Court, then that's probable cause. If it's later found out those statements are not truthful, that doesn't affect the mo--the warrant for arrest. That will affect their credibility in front of the jury. So, -

THE COURT: I would tend to agree with what he just said. That sounds correct to me, Mr. Norris.

MR. NORRIS: Yes sir. I agree.

THE COURT: Uh-huh.

MR. NORRIS: I, I think we can proceed.

THE COURT: Okay.

MR. STRIDER: And if that's the case, then their statements that are made to the police officers are irrelevant for this proceeding.

THE COURT: Correct.

MR. NORRIS: Yes sir. I agree.

THE COURT: Okay. Very good, then. Let's, let's do this. Let's go forward –

MR. STRIDER: So, as I understand it, we're moving today to suppress all evidence that was seized as a result of his arrest on June 16th, at 4:30 [sic] p.m., in Caldwell Parish.

MR. NORRIS: Yes sir.

MR. STRIDER: Everything before that that was seized is not subject to this Motion to Suppress. And anything that we had a Search Warrant for, which is primarily electronic evidence, that's not this motion is subject to suppress.

MR. NORRIS: Yes sir.

THE COURT: He agrees, it sounds like.

MR. NORRIS: Yes sir. I agree.

Detective John Stott ("Det. Stott") was the lead investigator in the case and the affiant in the affidavit in support of the arrest warrant. In his affidavit, Det. Stott referred to multiple statements made by Lefebvre. In

6

Lefebvre's first statement, the day after the homicide, he stated that he had taken Norris to Monroe and dropped him off but had not seen him since. Lefebvre, accompanied by an attorney, met with police for a second statement, in which he informed them that Norris threw the firearm out of the window of Lefebvre's truck as they left the area after the shooting. The sheriff's office searched the general area described, which was about 1,000 feet from where the shooting occurred, and they recovered a firearm and a magazine. In a third statement, Lefebvre gave detailed information about the homicide, including that Norris had gone inside the residence while Lefebvre was outside and Sharbono was still inside but not in the bedroom. He further stated that he heard Norris speak to the victim followed by gunshots, and heard Sharbono tell Norris to stop. Det. Stott also referred to inconsistent statements made by Sharbono. In one statement, she indicated she was standing right outside of the home at the time of the shooting and that Norris had shot Hines. She stated that she had called Norris complaining of Hines' treatment of her, he came to the residence, and he went inside and shot Hines. However, she also stated that she was walking down the street away from the residence when she heard gunshots.

Det. Stott testified that although Sharbono and Lefebvre made inconsistent statements, their accounts of the events eventually aligned. In addition, their statements were corroborated by physical evidence, such as the gun and magazine found where Lefebvre said it would be located, and their route of travel as shown by license plate readers matched the times of the texts and phone calls between Sharbono, Lefebvre, and Norris. The trial court issued the arrest warrant at 1:40 p.m. on February 16, 2024, based on

7

Det. Stott's affidavit referring to the statements, as well as the corroborating evidence.

Prior to the issuance of Norris's arrest warrant, the Caldwell Parish Sheriff's Office had received information that Norris was coming to the Parish to harm the witnesses to the homicide. Detective Tony Childress ("Det. Childress") and other officers were looking for Norris due to the threat. Since Norris was on probation for a previous offense, Det. Childress called the Louisiana Department of Probation and Parole for assistance, who informed him that Norris was heading toward Caldwell Parish in a white car and possibly traveling on Louisiana Highway 846, which was described by Det. Childress as a less-traveled backroad. Det. Childress had obtained Norris's new cell phone number from Lefebvre and, once the arrest warrant was issued, called AT&T to ask them to locate Norris's cell phone. Det. Childress testified that although no search warrant was issued for the cell phone locator, he believed there were exigent circumstances due to the threat to the witnesses. Based on the cell phone tracking information, officers set up at the intersection of Louisiana Highways 845 and 4. When a white car came through the area, Detective Zebulon Tucker ("Det. Tucker") noticed a man in the passenger seat with facial tattoos he believed may be Norris. Det. Tucker motioned for the car to pull over and immediately recognized Norris when he approached the vehicle. Norris was placed in restraints and leg shackles, as Det. Tucker searched the vehicle. He located a .45 caliber Taurus firearm, as well as a satchel with Norris's identification, ammunition, and a pistol magazine. Det. Tucker stated that he did not ask the driver for permission to search and nothing was in plain view, but he searched the vehicle incident to arrest.

All evidence related to the homicide was recovered either prior to the arrest or not as a result of the arrest. Bullets and casings were recovered from the crime scene, which matched the firearm that was recovered at the location identified by Lefebvre. An autopsy was conducted. A separate warrant was issued for certain electronic evidence. Various witness statements were obtained in addition to those of Sharbono and Lefebvre. The only evidence recovered as a result of the arrest was from the vehicle in which Norris was riding at the time of his arrest. This included a gun and ammunition, none of which were related to the homicide charge.

The trial court denied Norris's motion to suppress at the hearing on November 26, 2024. However, due to a copying error that had been made that resulted in a missing portion on the arrest warrant affidavit that had been provided to the defense during discovery, the trial court held an additional hearing on April 15, 2025, to allow Norris the opportunity to offer additional arguments based on the omitted information. The court also heard Norris's supplemental motions to suppress filed after the November 26, 2024, hearing, in which he claimed that evidence obtained during the arrest as a result of an illegal cell phone search should be suppressed. Norris also argued that any calls or video chats conducted while incarcerated should be suppressed as a result of the unlawful arrest and unlawful seizure following the arrest. The trial court also denied any additional arguments on Norris's motions to suppress and his supplemental motions to suppress.

**DISCUSSION**

Upon entering into his plea agreement, Norris generally preserved his right to appeal the trial court's rulings on the motions to suppress pursuant to *Crosby*, *supra*. Separate appeals were filed for trial docket numbers 105,037

9

(manslaughter and felon in possession of firearm), 105,018 (battery of a correctional officer), and 105,089 (felon in possession of a firearm – February 16, 2024, firearm). No appeal was filed in trial docket number 105,580 (obscenity). The appeals for trial docket numbers 105,037 (manslaughter and felon in possession of firearm) and 105,018 (battery of a correctional officer) were consolidated for briefing purposes, as they both concerned the same motion to suppress and supplemental motion to suppress. However, this Court dismissed the appeal for trial docket number 105,089 due to lack of jurisdiction since Norris had not been convicted or sentenced, and there was no final, appealable judgment to review.

Norris's motions to suppress are based on the (1) arrest warrant affidavit; (2) cell phone tracking; and (3) vehicle search following his arrest. As shown hereinabove by the parties' clarification during the hearing on November 26, 2024, the only evidence sought to be suppressed due to the alleged improper arrest warrant was what was seized as a result of Norris's arrest on June 16, 2024. The evidence obtained from the alleged improper arrest, the cell phone, and/or vehicle searches consists only of the firearm and ammunition found in the vehicle searched incident to Norris's arrest. Norris also argues that his jail calls should be suppressed.

A *Crosby* plea, as utilized by Norris, concerns a plea of guilty that is "expressly conditioned (and so accepted by the trial court) upon the accused's right to obtain appellate review of pre-plea rulings urged as reversibly erroneous." *Crosby*, *supra*, at 587. In general, a plea of guilty waives nonjurisdictional defects in the proceedings prior to the plea. *State v. Cooper*, 43,809 (La. App. 2 Cir. 1/14/09), 2 So. 3d 1172. Subject to the trial court's discretion, however, a defendant may enter a plea of guilty while

simultaneously reserving identified pre-plea errors for appellate review. *Id.*, *citing Crosby*, *supra*. The function of a *Crosby* plea is to permit a fair and efficient review of a central issue when the pre-plea ruling on that issue, if erroneous, would mandate reversal of any resulting conviction. *Id.* When a conditioned plea is accepted reserving an assignment of error as to a pre-trial ruling of this nature, we will assume that the evidence questioned is of this prejudicial nature and will be offered at the trial, unless the record prior to the plea demonstrates otherwise. *Crosby*, *supra* at 591.

Here, the evidence sought to be suppressed by Norris is completely unrelated to the charges of manslaughter and felon in possession of a firearm (February 11, 2024, firearm). It would in no way be prejudicial to Norris's standing charges per the plea agreement. It is related only to the charge of felon in possession of a firearm in trial docket number 105,089, which was dismissed pursuant to the plea agreement. The appeal therefrom was also dismissed for lack of jurisdiction because Norris had not been convicted or sentenced on the charge. Further, Norris would not have been entitled to review of the dismissed charge because he did not "plead guilty," nor was there a "conviction" from which to appeal from, as contemplated by *Crosby*.

As to Norris's claim that his jail calls should be suppressed as a result of the alleged improper arrest and/or searches, the calls were not the result of any actions of law enforcement and were so attenuated that there are no questions of constitutionality.

Accordingly, Norris's assignment of error that the trial court erred in denying his motions to suppress and supplement motions to suppress is wholly without merit.

11

**CONCLUSION**

For the reasons stated hereinabove, the trial court's denial of Norris's motions to suppress and supplemental motions to suppress, and Norris's convictions and sentences, are hereby AFFIRMED.